MARS, INCORPORATED, Plaintiff-Appellant, *v.* CURTISS CANDY COMPANY *et al.*, Defendants-Appellees.

(No. 57035; ▮▮▮▮▮▮▮▮)

First District—November 1, 1972.

*Rehearing denied November 29, 1972.*

Baker & McKenzie, of Chicago, (Horst H. Werder, Martin R. Greenstein, Francis D. Morrissey, Michael P. Connelly, and Thomas F. Tobin, of counsel,) for appellant.

Kirkland & Ellis, of Chicago, (Ronald L. Engel, Daniel W. Vittum, Jr., James M. Amend, and Jay G. Taylor, of counsel,) for appellees.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Plaintiff, Mars, Incorporated, is seeking a preliminary injunction enjoining the defendants from using the term *fun size* on or in connection with the advertising or sale of candy products during the pendency of this action.

Mars alleges infringement of its common law trademark rights and of its Illinois trademark registration, common law unfair competition, and

violation of the Uniform Deceptive Trade Practices Act. Ch. 121½, Ill. Rev. Stat. 1971, par. 312.

■■ After a comprehensive evidentiary hearing, the trial court concluded that the probability of plaintiff's ultimate success on the merits was not likely and therefore refused to grant a preliminary injunction. Plaintiff appeals from the trial court's denial of its motion. The sole question for review is whether the trial court abused its discretion in refusing to grant plaintiff a preliminary injunction. *Roth v. Daley*, 119 Ill.App.2d 462, 470, 256 N.E.2d 166, 170.

It is undisputed that Mars was the exclusive user of the term *fun size* from its inception in April of 1968 through August of 1971, when defendants began to use it. Mars employed the term on many of its candy products including *Snickers, Milky Way, Three Musketeers, Snickers Peanut Munch, Mars Almond Bars,* and *M & M's.*

A brief review of the historical background to the development of *fun size* candy is contained in the record. It appears that in the fall of 1957, defendant Curtiss (a wholly owned subsidiary of defendant Standard Brands) commenced producing and selling packs of small, multiple packed, individually wrapped, branded candy bars under its *Baby Ruth* and *Butterfinger* brands. This was the first time such a marketing concept had been used in the candy industry. Curtiss adopted the term "junior" to designate the size of its products.

In 1961, Mars commenced selling packs of small, multiple packed, individually wrapped candy bars under its various trademarks, including *Milky Way, Snickers* and *Three Musketeers.* Mars also employed the designation "junior" to describe the size of these products.

In 1968, Mars discontinued its "junior" size candy product and came out with a larger size of small, individually wrapped, multiple packed branded candy bars. These bars were intermediate in size between the old "junior" bars and the traditional size bars sold over the counter by Mars. It adopted the words *fun size* to describe this new category.

On this appeal, Mars first challenges the trial court's denial of relief for defendants' alleged infringement of plaintiff's trademark rights. Mars. concedes that the term *fun size* is a secondary support for its primary trademarks such as *Snickers, Milky Way,* etc. It stresses, however, that the term *fun size* was coined and adopted as an umbrella over its many candy products, and that the term acts as a common denominator by which people can identify its products without having prior familiarity with the primary trademark. Mars also emphasizes that the words *fun size* appear in a distinctive script logo in a prominent position on its packaging so that they create a separate and distinct commercial impression apart from any other trademark on its package.

Defendants contend that Mars never used the term *fun size* as a means of identifying the source of origin of its products. They argue that Mars never considered the term to be a trademark until just prior to instituting this suit, when it sought and obtained a *pro forma* Illinois registration. Defendants point out that Mars never sought or obtained any other registration including Federal registration for the term. They note that a west coast firm had obtained a Federal registration of the term "fun" for candy based on a 1926 date of first use. Defendants argue that since Mars could thus not establish proprietary rights in the word "fun" for candy, nor in the unquestionably descriptive word "size", it certainly cannot be entitled to monopolize the combination.

■■■ It is a well established principle of trademark law that the manner in which the party claiming exclusive rights to a term utilizes it affects the existence of those rights. This principle was pointed out in a series of generic name cases which involved coined and fanciful marks of great value, which were nonetheless dedicated to competitive use because the marks had acquired a descriptive connotation to the public. Once a mark (no matter how many millions of dollars of investment it represents) becomes associated by the public as being descriptive of the goods to which the mark is affixed, trademark rights in the mark cannot be maintained, and the mark becomes public domain property.

In *Bayer Co., Inc. v. United Drug Co.*, 272 F. 505, the registered trademark "aspirin" was invalidated because it had become merely a descriptive name of a particular pain reliever pill, and thus no longer protectable as a trademark. The test, as stated by Judge Learned Hand, was,

> "What do the buyers understand by the word for whose use the parties are contending? If they understand by it only the kind of goods sold, then, I take it, it makes no difference whatever what efforts the plaintiff has made to get them to understand more. [272 F. at 509]
>
> \* \* \*
>
> After all presumptions and other procedural advantages have been weighed, the owner must show that his mark means him, else he cannot prevent others from using it." 272 F. at 513.

See also *Dupont Cellophane Co., Inc. v. Waxed Products Co., Inc.*, (2d Cir.), 85 F.2d 75; *King-Seeley Thermos Co. v. Aladdin Industries, Inc.* (2d Cir.), 321 F.2d 577, and *Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co.* (7th Cir.), 343 F.2d 655.

■■ In the instant case, the burden was on Mars to show that the term *fun size* meant, Mars. Our review of the record, including the numerous exhibits, indicates that nowhere in its advertising or labelling does Mars convey any indication that the term *fun size* is intended to

serve as a brand or trademark to indicate the source of origin of its products. In fact it appears that Mars has consistently hammered home to its customers the message that the words *fun size* describe the product, not the producer. Moreover, we note that Mars only attempted to claim trademark rights in *fun size* after defendants sought to compete in selling this size candy product to the public.

■■ The essence of trademark infringement is likelihood of confusion. *Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Division, Standard Brands, Inc.,* 261 F.Supp. 200, aff'd 7th Cir., 395 F.2d 833. In the above case, cited by both parties, it was held that a distinction should be drawn between situations where the alleged infringer is unknown and those where it is very well known as denoting a particular brand or source. In the latter case, where the brand name is prominently stressed in the label, there is little likelihood of confusion as to source. Planters, which was the alleged infringer in the *Ye Olde Tavern Cheese Products* case as well, clearly falls into the latter category.

■■ Nor does Mars' Illinois registration of the term *fun size* create trademark rights where they would not otherwise exist. The law is clear that no substantive rights are established by state trademark registration. *Adams v. Kassnel,* 16 Ill.App.2d 540, 148 N.E.2d 818.

■■ Apart from the trademark infringement issue, plaintiff also urges that the court below erred in not granting it relief from defendants' alleged acts of unfair competition. Mars argues that even assuming that the Circuit Court was correct in holding that the term *fun size* is not a good trademark, defendants' use of that term nevertheless constitutes unfair competition. Plaintiff also contends that defendants engaged in unfair competition by allegedly copying the color of Mars' *Snickers Peanut Munch* peanut bar packaging.

■■ Where unfair competition is charged, the test of confusion encompasses the whole product and its dress, and not just the trademark. Plaintiff, having failed to make any showing of likelihood of confusion, is in no position to pursue its claim of unfair competition. (*Ye Olde Tavern Cheese Products, Inc., v. Planters Peanuts Division, Standard Brands, Inc.,* 261 F.Supp. 200, 207, aff'd 7th Cir., 394 F.2d 833.) Since *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225 and *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, the burden of establishing a case of unfair competition has been a heavy one. (See, e.g., *Spangler Candy Co. v. Crystal Pure Candy Co.,* 7th Cir., 353 F.2d 641.) As decided in *Spangler,* the copied feature must have secondary meaning to the point where the public associates the feature with a particular source. (*Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Division, Standard Brands, Inc.,* 261 F.Supp. 200, 207, aff'd 7th Cir., 394 F.2d 833.) Mars

has not shown that customers associate the term *fun size* with its products. Nor has it shown that defendants had any intent to "palm off" their product as that of the plaintiff. On the evidence before us, we think the trial court did not err in refusing to grant plaintiff's request for relief from defendants' alleged acts of unfair competition.

■■ Since, as plaintiff acknowledges, the Uniform Deceptive Trade Practices Act (ch. 121½, Ill. Rev. Stat. 1971, par. 312), is merely a codification of the common law of unfair competition, its request for relief under that statute must fail as well.

■■ We perceive no error in the refusal by the court to admit into evidence over objection, consumer affidavits offered by plaintiff in support of its motion for a temporary injunction. Mars was given the opportunity to bring in its affiants but did not do so. The kind and extent of hearing a party is entitled to on a motion for interlocutory injunction *is* committed largely to the discretion of the trial court. *Hinson v. Ralston,* 100 Ill.App. 214, 219; *Naxon Telesign Corp. v. Selig,* 38 Ill.App.2d 242, 244, 186 N.E.2d 666, 667.

■■ A preliminary injunction is an extraordinary remedy which should be granted only pursuant to the utmost care. Such a remedy rests in the sound discretion of the court and should not issue unless the need is clear. (*Naxon Telesign Corp. v. Selig,* 38 Ill.App.2d 242, 244, 186 N.E.2d 666, 667; *Gifford v. Rich,* 58 Ill.App.2d 405, 407-8, 208 N.E.2d 47, 48.) Despite an extended evidentiary hearing, Mars failed to persuade the trial court that such a need existed. We have reviewed all of the evidence in this case and we are satisfied that the court's refusal to grant a preliminary injunction was correct.

For the reasons indicated we have concluded that the order denying plaintiff the temporary injunction should be affirmed.

Order affirmed.

DIERINGER, P. J., and ADESKO, J., concur.