Schwalm Electronics, Inc. *et al.*, Plaintiffs-Appellants, *v.* Electrical Products Corporation *et al.*, Defendants-Appellees.

(No. 57089;

First District (2nd Division)—August 21, 1973.

George H. Gerstman, of Lettvin and Gerstman, of Chicago, for appellants.

Green, Murnighan & Kane Associates, of Chicago, for appellees.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an interlocutory appeal brought under the procedure authorized by Supreme Court Rule 307.[1] The issue is whether the trial court abused its discretion when it denied plaintiffs' motion for a preliminary injunction.[2] The facts are not in dispute.

## I.

Schwalm Electronics and Television Laboratories, the plaintiffs in the trial court, are Illinois corporations owned and controlled by Walter Schwalm. Electrical Products, one of the defendants, is an Illinois corporation organized, owned and controlled by the other defendants, Roger D. Lehman and Nicholas M. Harrison.[3] Schwalm manufactures and sells devices that are used in the assembly of television sets: (1) blue laterals; (2) purity rings for color television; (3) centering rings for black and white television; and (4) width controls for color and black and white television. TV Labs manufactures and sells de-gauss coils and deflection yokes, devices also used in the assembly of television sets. For two and a half years prior to November 1, 1971, Lehman was Schwalm's general manager and the sales manager for TV Labs. He sold their products and managed Schwalm's plant in Highland Park, Illinois. Harrison, about one year prior to November 1, 1971, was an employee of Schwalm. After he left Schwalm's employ, Harrison met and talked with Lehman about their going into a manufacturing and sales business. As a result, late in October 1971, they decided to form Electrical. On November 1, 1971,

---

[1] Ill. Rev. Stat. 1971, ch. 110A, par. 307.
"§ 307. (Supreme Court Rule 307). Interlocutory Appeals as of Right
  (a) Orders Appealable; Time. An appeal may be taken to the Appellate Court from an interlocutory order of court
    (1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction;  *  *  *."

[2] In the trial court and in this appeal, the parties refer to the requested injunction order as a "temporary injunction." This term is no longer appropriate. The correct term to use in referring to an injunction *pendente lite* is "preliminary injunction." See Ill. Rev. Stat. 1969, ch. 69, pars. 3, 3—1 and our recent discussion of this point in *Paddington Corporation v. Foremost Sales Promotions, Inc.*, 13 Ill.App.3d 170. Therefore, throughout this opinion, we will refer to the trial court proceedings as pertaining to a "preliminary injunction."

[3] In the balance of this opinion, plaintiffs-appellants Schwalm Electronics, Inc. and Television Laboratories, Inc., when referred to jointly will be called plaintiffs; when referred to individually, will be called Schwalm or TV Labs. Defendants-appellees Electrical Products Corporation, Roger D. Lehman, and Nicholas M. Harrison, when referred to jointly will be called defendants; when referred to individually, will be called Electrical, Lehman or Harrison, respectively.

after a short notice, Lehman terminated his employment with the plaintiffs. Thereafter, he and Harrison went to work as Electrical's principal officers and employees.

On December 29, 1971, plaintiffs filed a suit against Electrical, Lehman, and Harrison in which they alleged that the manufacture of their television devices involved techniques which were trade secrets; that Schwalm's purity and centering rings were formed of a confidential steel composition, one subjected to a special heating technique and a confidential process of magnetization; that these trade secrets were unknown to others in the industry and gave plaintiffs an advantage over their competitors. The complaint alleged that plaintiffs regarded their manufacturing techniques as confidential trade secrets; that they made their employees aware of the confidential nature of these secrets; and that these secrets were the property of Schwalm or TV Labs.

In a separate subdivision of the complaint, it was alleged that Lehman, because of his confidential relation with plaintiffs, knew of the confidential manufacturing techniques and trade secrets used in the manufacture of the devices produced and sold by the two corporations; that he became familiar with their customers; that, in breach of the confidential duties he owed his former employers, Lehman, acting with Harrison, organized and incorporated Electrical for the purpose of competing with the plaintiffs. In carrying out this purpose, the complaint alleged, Lehman attempted to persuade certain of plaintiffs' employees to leave their employment and work with Electrical; that Lehman and Harrison conspired to obtain orders from customers of Schwalm or TV Labs, utilizing the trade secrets of the two corporations and manufacturing products that were identical, thus enabling Electrical to under-sell plaintiffs and make sales to plaintiffs' customers at more favorable prices. Additionally, the complaint alleged that Electrical, in competition with plaintiffs, purchased from Schwalm's suppliers the confidential and special type of steel that Schwalm used in the manufacture of purity and centering rings; that, as a result, plaintiffs were being caused immediate and irreparable injury by the disclosure of their trade secrets and by the fact that defendants were selling at prices which plaintiffs would have to meet. Plaintiffs prayed judgment that defendants, their employees, agents, servants, and those in privity with them, be preliminarily, and thereafter permanently, enjoined from manufacturing and selling the devices manufactured and sold by plaintiffs; from disclosing to anyone the methods defendants were using in manufacturing those devices; from utilizing in any manner plaintiffs' trade secrets relating to the manufacture of their television devices; from contacting or having any contact with plaintiffs' employees for the purpose of hiring them; and

from unfairly competing with plaintiffs in any manner. In addition, plaintiffs prayed for an accounting, for damages, and for such other relief as the court may deem just and proper.

Defendants answered the complaint and denied its material allegations. Plaintiffs then renewed a motion for a temporary restraining order or injunction which they had made but had been denied the day after their complaint was filed. The renewed motion was heard. Plaintiffs called Walter Schwalm, Lehman as an adverse witness, and Richard Schulze, a former employee of the plaintiffs who, a short time before, had left their employment to work for Electrical. After putting into the record this testimonial evidence and 15 exhibits, plaintiffs rested their case for a preliminary injunction. Defendants moved for a direct finding in their favor. Thereupon, plaintiffs requested a continuance for the filing of briefs. Then, after these were filed and the parties were heard, the trial court entered an order which found plaintiffs had failed to prove (1) that they were possessors of trade secrets entitled to protection; (2) that there was any improper appropriation of trade secrets by defendants; (3) that there was any use or threatened use of trade secrets by defendants. Therefore, defendants' motion was sustained and plaintiffs' motion for preliminary injunction was denied.

## II.

Urging that we set aside this order, plaintiffs contend that the trial court's denial of injunctive relief was an abuse of judicial discretion. They argue that the trial judge applied erroneous standards when he determined that they were not possessors of judicially protectable trade secrets. For example, plaintiffs assert that the judge mistakenly assumed they had the burden of proving exclusive use of their manufacturing techniques; and that the techniques, classified by them as trade secrets, were patentable. Relying on the doctrine of confidentiality between employees and employers, plaintiffs point out that Lehman was a confidential employee who was entrusted with information concerning manufacturing techniques that plaintiffs used in the production of their television devices. Therefore, plaintiffs contend that the trial court erred in finding that they were not possessors of trade secrets entitled to judicial protection.

Defendants meet this contention with the argument that the central issue in this case, the issue to be resolved at a trial of the merits, is whether plaintiffs are owners of trade secrets. Defendants maintain that in their application for the preliminary injunction, plaintiffs had the burden of making a prima facie showing that (1) they were owners of trade secrets, a fact which defendants deny; (2) that defendants had,

by improper means, appropriated these trade secrets; (3) that defendants had used or had threatened to use these secrets; and (4) that as the result of some act or omission by defendants, plaintiffs had suffered damage. Defendants insist that plaintiffs offered all the evidence they had in support of their motion for preliminary injunction but failed to carry their burden of proof; and as a consequence, did not persuade the trial judge to exercise his discretion and grant them injunctive relief. Therefore, defendants conclude, the trial court ruled correctly when it made its findings and when, in the proper exercise of discretion, it denied plaintiffs' motion.

■■ The purpose of Supreme Court Rule 307(a)(1), under which this interlocutory appeal was brought, is to permit, as a matter of right, review of a trial court's exercise of discretion with regard to the grant, refusal, modification, dissolution or refusal to dissolve or modify an injunction. (See *Bohomolec v. Gieblewicz*, 3 Ill.App.3d 16, 18, 278 N.E.2d 202.) A preliminary injunction is issued to preserve the status quo until the trial court can consider the merits of the case. (*Nelsen & Sons, Inc. v. General American Development Corp.*, 6 Ill.App.3d 6, 284 N.E.2d 478.) It is an extraordinary remedy which should be granted only with the utmost care. Its grant rests in the discretion of the trial court. (*Mars, Inc. v. Curtiss Candy Co.*, 8 Ill.App.3d 338, 290 N.E.2d 701.) In ruling on an application for such relief, controverted facts or the merits of the case are not decided. (*Lonergan v. Crucible Steel Co. of America*, 37 Ill.2d 599, 229 N.E.2d 536; *H.K.H. Development Corp. v. Metropolitan Sanitary District*, 47 Ill.App.2d 46, 196 N.E.2d 494.) Consequently, the merits of the case are not brought before a reviewing court by an interlocutory appeal. (*Shatz v. Paul*, 7 Ill.App.2d 223, 129 N.E.2d 348.) The only question reviewed in such an appeal is whether there was a sufficient showing to sustain the order of the trial court granting or denying the relief sought. (See *Schuler v. Wolf*, 372 Ill. 386, 24 N.E.2d 162; *Guvo v. Banis*, 331 Ill.App. 415, 73 N.E.2d 156 (abstract opinion); *Cook County v. Yacktman*, 25 Ill.App.2d 448, 166 N.E.2d 466 (abstract opinion).) Therefore, in the case before us, we can decide only whether, prima facie, plaintiffs showed the trial court that there was a fair question as to existence of the rights claimed; that the circumstances lead to a reasonable belief that they probably will be entitled to the relief sought, if evidence sustains their allegations; and that matters should be kept in status quo until the cause could be decided on its merits. *O'Brien v. Matual*, 14 Ill.App.2d 173, 144 N.E.2d 446.

Plaintiffs supported their motion for a preliminary injunction with evidence that consisted of 15 exhibits, the testimony of their president

and owner, Walter Schwalm, the testimony of Lehman, and that of Richard Schulze, a former employee. Walter Schwalm traced plaintiffs' history and the development of their business. He described their manufacturing techniques and what he said were their trade secrets. He told of the confidential relation between Lehman and plaintiffs. Walter Schwalm, however, was equivocal concerning the extent to which other persons knew of the processes that plaintiffs used in the manufacture of their television devices.

For example, he did not know the extent to which TV Labs' technique of producing de-gauss coils was known by others. He was uncertain concerning the security measures which plaintiffs employed in guarding what he described as trade secrets and secret manufacturing processes. He testified that some of the employees who had worked on centering rings had left Schwalm's employment. He did not know where these former employees had gone or to what extent they had disclosed plaintiffs' confidential techniques to others.

From what Walter Schwalm knew of plaintiffs' manufacturing processes, they did not have a continuing program of security maintenance in their plants. Without suggesting that these are essential, we observe there were no blueprints, drawings or written formulae of what plaintiffs claimed were their trade secrets. From plaintiffs' evidence, it appears that an engineer like Lehman could easily develop a magnetizing and steel tempering process of the kind described by Walter Schwalm. The confidential and special type of steel which he said was part of the confidential process in the production of Schwalm's centering rings is a common supply item easily obtainable in the open market. The coil-winding machine involved costs approximately $200 to $500 to reproduce. Although from plaintiffs' exhibits their television devices appear technical, they are products which other manufacturers make and use in the assembly of television sets. Plaintiffs' devices are produced in accordance with specifications furnished by their customers. In sum, plaintiffs' manufacturing processes are simplistic. The winding, tempering and magnetizing are common manufacturing techniques that are easily duplicated. Significantly, in his direct examination, Walter Schwalm answered a question by saying that "I was prompted to bring this lawsuit because (1) I found that Mr. Lehman had called on a customer of ours and (2) I found that Mr. Lehman had purchased a quantity of the exact same steel that we use to manufacture rings."

Lehman, who was examined as an adverse witness, testified to having talked with Harrison about going into business but without specific mention of what they were going to manufacture. He admitted learning,

while plaintiffs' employee, that some of their methods of manufacture were confidential. He said that he and Harrison formed Electrical in October 1971; and at the time of his testimony, the company was producing de-gauss coils, centering caps (which included centering rings), antennas and telescoping antennas. Lehman admitted solicitation of plaintiffs' customers and purchasing from plaintiffs' supply sources, but he denied that he or Electrical were using or intended to use any of plaintiffs' manufacturing techniques.

Schulze, who was plaintiffs' witness, testified that he left their employ and went to work for Electrical after talking with Lehman. Schulze explained, however, that Lehman "\* \* \* knew I was unhappy at Television Laboratories and I was planning on leaving, and that was about the extent of it." Neither plaintiffs' exhibits nor their testimonial evidence showed, or even suggested, that plaintiffs had suffered or were going to suffer irreparable harm or damage, or that they were faced with an emergency or peril because of any act or omission of the defendants.

■ In order that an injunction be granted, it should be clear that the plaintiff has a lawful right for which he seeks protection; his right must be certain and clearly ascertained. (See *Professional Business Management, Inc. v. Clark*, 83 Ill.App.2d 236, 227 N.E.2d 371; I.L.P. Injunctions § 13.) A preliminary injunction will not issue unless it is shown that the defendant is doing or threatens to do something contrary to law and prejudicial to the plaintiff. (*Mid-States Vending Service, Inc. v. Rosen*, 77 Ill.App.2d 83, 222 N.E.2d 99.) There must be a showing that irreparable harm will be done if the status quo is not maintained. (*County of DuPage v. Robinette*, 77 Ill.App.2d 167, 221 N.E.2d 769.) By status quo is meant the last, actual, peaceable, uncontested status which proceded the pending lawsuit. *Consumers Digest, Inc. v. Consumer Magazine, Inc.*, 92. Ill.App.2d 54, 235 N.E.2d 421; *American Snacks, Inc. v. Schaul*, 132 Ill,App.2d 718, 270 N.E.2d 209.

■■ In this case, plaintiffs' evidence did not show a clear right to the protection they sought. Their evidence did not prove any conduct of defendants that was contrary to law or prejudicial to them. It did not show irreparable harm or damage. (See *Compton v. Paul K. Harding Realty Co.*, 87 Ill.App.2d 219, 231 N.E.2d 267.) Nor did it show any grave or immediate peril to which plaintiffs were subjected as the result of any act or omission of the defendants. (Compare *Naxon Telesign Corp. v. Selig*, 38 Ill.App.2d 242, 186 N.E.2d 666.) Despite an extended evidentiary hearing, plaintiffs failed to persuade the trial court that a need existed for preliminary injunctive relief. (See *Mars, Inc. v. Curtiss Candy Co.*, 8 Ill.App.3d 338, 344, 290 N.E.2d 701.) Under

these circumstances, we conclude that the trial court did not abuse its discretion when after making its findings it denied plaintiffs' motion for preliminary injunction. The order is affirmed. *James C. Wilborn & Sons, Inc. v. Heniff,* 95 Ill.App.2d 155, 237 N.E.2d 781.

Affirmed.

SCHWARTZ and HAYES, JJ., concur.