EDGEWATER CONSTRUCTION CO., Plaintiff-Appellee, *v.* PERCY WILSON MORTGAGE & FINANCE CORPORATION, Defendant-Appellant.—(STATE BANK OF CLEARING *et al.*, Defendants.)

First District (2nd Division)   No. 61977

Opinion filed November 30, 1976.

JIGANTI, J., specially concurring.

Harvey J. Barnett and Lester Rosen, both of Chicago (Rosenthal and Schanfield, of counsel), for appellant.

Keith F. Bode, Robert L. Byman, and Barbara S. Steiner, all of Chicago (Jenner & Block, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Pursuant to Supreme Court Rule 307(a)(1) which authorizes interlocutory appeals as a matter of right,[1] defendant, Percy Wilson Mortgage & Finance Corporation (Percy Wilson), appeals an order of the circuit court of Cook County granting a preliminary injunction to restrain the cashing of a letter of credit, the details of which follow.[1]

Plaintiff, Edgewater Construction Co., Inc., filed its verified complaint to enjoin Percy Wilson, State Bank of Clearing (State Bank) and Metropolitan Savings Bank (Metropolitan) from cashing certain letters of credit, and asked for the return of the letters, the return of certain monies

---

[1]See Ill. Rev. Stat. 1973, ch. 110A, par. 307(a)(1).

held by Percy Wilson, and money damages against Percy Wilson for breach of contract. Percy Wilson filed its verified answer alleging that the complaint failed to state a cause of action; that there was no immediate or irreparable injury to plaintiff; that plaintiff had an adequate remedy at law; and that the complaint failed to allege any legal basis, right, title, or interest on plaintiff's part in or to the letters of credit. Involved in this last defense is the issue that Edgewater Walk Apartments (partnership), a limited partnership, was not a party plaintiff even though the letters of credit clearly state they were issued on behalf of the partnership.

After notice and hearing, the trial court entered an order for a preliminary injunction finding that the equities required that the status quo be preserved during the litigation; that the corporation and partnership, two business entities, would be treated as a single unit; and ordered State Bank to extend the letters of credit during the pendency of the litigation and enjoined it from cashing the letters; and that Metropolitan and Percy Wilson were enjoined from cashing, presenting for cashing, assigning, pledging, hypothecating, or otherwise encumbering the letters of credit. Pending appeal, plaintiff was required to post a bond.

On appeal Percy Wilson claims (1) plaintiff failed to properly plead and prove irreparable injury; (2) plaintiff has an adequate remedy at law for a breach of contract; and (3) the trial court had no legal right under the pleadings and evidence to issue such an injunction. Plaintiff urges that the trial court acted within its discretion in issuing the injunction to preserve the status quo.

Based on the pleadings and the evidence, the pertinent facts follow. Involved in the series of events were the following business organizations or individuals, although not all are named parties in this litigation:

*Chicago Title and Trust Company (CT&T) as Trustee under Land Trust*:

(a) 59130 the title owner of the real property involved in the instant project; and

(b) 51473 the title owner of certain real property for which Terry Davis (Davis) is the beneficiary. The beneficial interest was assigned to State Bank as part of the security agreement in connection with the subject letters of credit.

*Edgewater Walk Apartments*, a partnership. In 1972, at the time of most of the original activities involved in this litigation, there were four general partners. Later Davis became the sole general partner with nine limited partners. It owns the Apartments. Bank accounts were maintained at the First National Bank of Chicago and the La Grange State Bank.

*Edgewater Construction Co., Inc.*, an Illinois corporation, the

plaintiff, formed in 1972 for the purpose of working as the contractor on the subject project. Davis is the sole stockholder although originally there were three shareholders.

*Terry Davis* (Davis), the president and sole stockholder of plaintiff, and general partner in the partnership.

*Percy Wilson Mortgage & Finance Corporation*, a Delaware corporation, with offices in Chicago. It provided the construction financing for the apartment project.

*State Bank of Clearing*, an Illinois banking corporation, which issued the letters of credit.

*Metropolitan Savings Bank*, a foreign banking corporation, which was to provide the permanent financing.

### The Transactions

On January 24, 1972, the partnership and Percy Wilson entered into an agreement for a $3,358,000 first mortgage loan for the construction of an apartment project. Amongst other provisions the agreement provided that the partnership would make such deposits as might be required for equity requirements with the right for Percy Wilson to accept letters of credit in lieu of cash deposits. The sponsors of the project included Davis and three other individuals who comprised the partnership.

Thereafter, on March 1, 1972, the following agreements were entered into:

A *construction contract* between the owner of the real estate, CT&T No. 59130,[2] and plaintiff to build the apartment project. The agreement, amongst other provisions, specified the apartment would be built according to the drawings and specifications of Federal Housing Administration (FHA) Project No. 071-35130 and would be completed by August 23, 1973, to cost $2,664,840 plus, and required the contractor (plaintiff) to furnish the owner (CT&T No. 59130) a completion assurance agreement in the amount of $333,105 to run to the owner and lender (Percy Wilson).

A *construction loan agreement* in the amount of $3,358,800 from Percy Wilson to CT&T No. 59130, secured by a mortgage payable December 1, 2013, with interest at 7%, and insured by FHA. It also provided that the apartment project would be completed by September 28, 1973, that CT&T No. 59130 shall furnish Percy Wilson an assurance of completion in such form as provided in FHA regulations.

A *completion assurance agreement* between plaintiff, CT&T No. 59130

---

[2] In its verified answer, Percy Wilson alleges the sole beneficiary of Trust No. 59130 was the partnership. Plaintiff's verified reply did not deny this allegation. Our review of the record fails to indicate any evidence to contradict the allegation in the answer.

and Percy Wilson. Pursuant to this agreement plaintiff, as contractor, was required to deposit with Percy Wilson, as lender, the amount of $333,105 to secure and indemnify CT&T No. 59130, as owner, and Percy Wilson from loss or damage should plaintiff default in this contract. It was understood that the fund would be under the control of Percy Wilson in the form of an unconditional, irrevocable letter of credit issued to Percy Wilson by a banking institution.

### The Letters of Credit

On March 21, 1972, State Bank issued an 18-month letter of credit to Percy Wilson in the amount of $333,105. This was used in lieu of a performance bond. The verified complaint asserts plaintiff deposited this letter of credit with Percy Wilson pursuant to the completion assurance agreement. In its verified answer Percy Wilson alleges this was deposited by the partnership. We find no evidence in the record on this disputed point.

The apartment project was completed in July 1974. In August 1974, Percy Wilson made a demand on the letter of credit. The demand to Davis was made because, first, "a lot of money was owing by Davis to us"; second, "the case was teetering on default"; and third, there was a possibility of having to place a latent defect deposit with the permanent lender, Metropolitan. Thereupon, Percy Wilson sent its letter of credit to State Bank demanding cash. Thereafter, as the result of conversations between Davis and Percy Wilson, the latter received a payment of some $66,000, and Davis brought to Percy Wilson three new letters of credit from State Bank as follows:

*Letter of Credit No. 325*, issued by State Bank, dated January 2, 1975, payable to Metropolitan in the amount of $120,000 for the account of the partnership. The evidence indicates this was issued to the permanent lender to secure the construction of a clubhouse at the project.[3] Its terms were similar to those of No. 326 set forth in detail below.

*Letter of Credit No. 326*, the subject of the instant litigation, issued by State Bank, reads as follows:

"January 2, 1975
IRREVOCABLE STRAIGHT LETTER OF CREDIT NO. 326
AMOUNT: $79,274.00
TO: Percy Wilson Mortgage & Finance Corporation
    221 North La Salle Street
    Chicago, Illinois 60601
        Re: FHA Project #071-35130 PM
        Tinley Park, Illinois

---

[3] Sometime during the litigation, Metropolitan surrendered the $120,000 letter to the plaintiff and was dismissed from the litigation.

Gentlemen:

We hereby establish our unconditional and irrevocable credit No. 326 in your favor for the account of EDGEWATER WALK APARTMENTS, a limited partnership, in the aggregate amount of Seventy Nine Thousand, Two Hundred Seventy Four Dollars and No Cents ($79,274.00) United State [*sic*] Currency available by your drafts on us at sight.

Drafts must be presented no later than March 1, 1975.

Drafts drawn under this credit must be marked "Drawn under Credit No. 326 of State Bank of Clearing" and accompanied by your signed certificate stating that the amount is due and owing in connection with FHA Project No. 071-35130 PM.

We hereby agree with you that the drafts drawn under and in compliance with the terms of this credit shall be duly honored on due presentation to the State Bank of Clearing, 5235 West 63rd Street, Chicago, Illinois 60638.

> Very truly yours,
> /s/ Ronald J. Homa
> Ronald J. Homa
> Assistant Vice President"

This letter of credit was subsequently extended from March 1, 1975, to June 1, 1975.

*Letter of Credit No. 327*, issued by State Bank, dated January 2, 1975, payable to Metropolitan in the amount of $67,210, or 2½ percent of the construction contract. This letter was assigned by Metropolitan to Percy Wilson and on April 4, 1975, paid by State Bank to Percy Wilson.

The evidence indicated that State Bank obtained promissory notes as security for the aforesaid letters issued on January 2, 1975, which were signed by "Edgewater Construction Co., Terry A. Davis, President" and guaranteed by "Terry A. Davis." The State Bank also received a chattel mortgage security agreement from the plaintiff with Davis assigning the beneficial interest in CT&T No. 51473.

Ronald J. Homa, vice president of State Bank, testified that the language used in letters 325, 326, and 327 was copied from the original 1972 letter, and that he did not know who was responsible for the original verbiage; that the letters of credit were extended from time to time at the request of Percy Wilson and the plaintiff in the name of the partnership; that the partnership was the sponsor of the project; that Davis was a partner in the partnership; that Davis filled in the signatures on the collateral promissory notes and security agreements; that so far as he was concerned it did not matter who signed as the property was the valuable collateral; and that plaintiff was the customer of the State Bank.

Davis testified that Homa typed the letters of credit, handed them to

Davis who testified once he read them, and later said he did not read them, however, did deliver them to Percy Wilson. Davis also identified his signature on a letter of agreement, relevant to the instant transaction, with Percy Wilson dated October 10, 1974, wherein he signed on behalf of himself, as general partner on behalf of the borrower and as president of the original general contractor.

Jack Korshak, vice president of Percy Wilson, testified about his dealings with Davis on the project; that because of approximately $200,000 owing Percy Wilson in December 1974, he demanded of Davis cash rather than the letters of credit, however he accepted the three letters of credit, but that he did not know until in court how Davis obtained the letters of credit; and that his company was concerned about the soundness of letters of credit not issued by a major bank. Korshak further testified that as of May 2, 1975 (shortly before the injunction hearing), the partnership owed Percy Wilson the amount of $226,768.39. On the other hand, Davis testified that the plaintiff and the partnership have various claims against Percy Wilson.

On or about April 28, 1975, Percy Wilson presented a draft to State Bank for payment upon letter of credit No. 326. The letter contained the certificate as required by its terms. On April 30, 1975, the instant injunctive action commenced.

The trial court at the conclusion of the hearing, amongst other things, stated it believed it most equitable to have State Bank continue with the letters of credit, and that he considered the partnership and plaintiff, "because of the identity and because of the involvement of the two, as one unit."

I.

The threshold issue concerns the absence of Edgewater Walk Apartments, the partnership, as a party in this litigation. Or to state the issue another way, is plaintiff, not described or identified in the subject letter of credit, entitled to an injunction enjoining the honor of the letter.

As outlined in the preceding statement of facts, the letter of credit confirms to Percy Wilson that State Bank established its unconditional and irrevocable credit in favor of Percy Wilson for the account of the partnership.

The initial agreement, dated January 24, 1972, for a $3,358,000 first mortgage loan was between the partnership and Percy Wilson. Pursuant to this mortgage loan agreement, the partnership, as mortgagor, was obligated to provide letters of credit as deposits for equity requirements. Plaintiff was the contractor whose contract to construct the apartments was with CT&T No. 59130, title owner of the real property. Plaintiff was required to deposit with Percy Wilson letters of credit to secure and

indemnify the owner and Percy Wilson from loss and damage should plaintiff default. In our opinion, the record indicates Percy Wilson, as the lender of money, was receiving security from the partnership, as the borrower, and from the contractor, in order to protect itself should there be a default during or as the result of the construction.

The record clearly indicates that Davis, as the president and stockholder of plaintiff and general partner of the partnership, for whatever reason, created separate legal entities for apparently different purposes. For example, there was the partnership as owner of the apartments, a land trust as title owner of the real estate, and plaintiff corporation as the contractor. As we said in *In re Application of County Treasurer* (1st Dist. 1969), 113 Ill. App. 2d 50, 57, 251 N.E.2d 757, parties "* * * cannot be permitted to adopt a legal entity and be blessed with both a sword and a shield depending upon the varying facts and circumstances."

It is apparent from the pleadings and the evidence that the partnership has, or should have, an interest in the subject matter of the litigation. In our opinion the partnership was an indispensable party and should have been joined. (*Hobbs v. Pinnell* (1959), 17 Ill. 2d 535, 536, 162 N.E.2d 361.) Both by its verified answer and in a colloquy with the trial court before the hearing commenced, the absence of the partnership as a party was brought to the attention of the trial court. In *Georgeoff v. Spencer* (1948), 400 Ill. 300, 302, 79 N.E.2d 596, our supreme court held that if the lack of proper parties is brought to the attention of the court, it should not proceed further until the omission has been corrected. All parties indispensable to a decision of the case are necessary parties to a bill of equity. (*Gaumer v. Snedeker* (1928), 330 Ill. 511, 515, 162 N.E. 137; *People ex rel. Meyer v. Kerner* (1966), 35 Ill. 2d 33, 38, 219 N.E.2d 617; *B. J. Lind & Co. v. Diacou* (1st Dist. 1971), 3 Ill. App. 3d 299, 302, 278 N.E.2d 526; *Glickauf v. Moss* (1st Dist. 1974), 23 Ill. App. 3d 679, 683-84, 320 N.E.2d 132.) Before an action can lie there must be a plaintiff with the requisite interest to bring the suit. *Robinette v. Department of Public Works & Buildings* (2nd Dist. 1971), 2 Ill. App. 3d 438, 444, 276 N.E.2d 804.

■■ We think the trial court erred in failing to require the partnership to be joined as a necessary party plaintiff. To suggest, as did the trial court, that the two entities could be considered as one unit is to completely disregard the obviously careful pattern of the owners who created the separate entities. Having created separate entities and transacting business by means of such a device, the creators should then not be permitted to disregard the fruits of their planning. It was error to grant a preliminary injunction on the record in this case. Normally, if there were no other errors, the cause could be remanded to permit the

partnership to be added. However, for the reasons set out in the subsequent sections of this opinion, a remand for such a purpose would be inappropriate.

## II.

We next consider, aside from the problem discussed above, whether a preliminary injunction is appropriate based on the record in this case.

## A.

As a letter of credit is the subject of the litigation, we first consider the Uniform Commercial Code in effect in Illinois (Ill. Rev. Stat. 1973, ch. 26, par. 1—101 *et seq.*). Section 5—103(a) of the Code defines a letter of credit as an engagement by a bank—either revocable or irrevocable—at the request of a customer that the bank honor drafts for payment (to the beneficiary) upon compliance with the conditions specified in the letter. Using the language of the subject letter, the parties in the definition are, "bank"—State Bank; "customer"—Edgewater Walk Apartments, the partnership; and "beneficiary"—Percy Wilson.

Section 5—103(g) states that a "customer" is a buyer or other person who causes an issuer to issue a credit. There is a conflict in the evidence as to who caused State Bank to issue the letter. The letters themselves clearly identify the partnership as the customer. Davis delivered the subject letters to Percy Wilson. Notwithstanding his contradictory testimony, it is difficult to believe Davis did not read the letter, an important document to say the least, and was not aware that the partnership was identified as the customer. The security for the letters of credit obtained by State Bank through Davis was from the plaintiff. We do not think the record clearly established who caused the State Bank to issue the letters, if it was not the partnership.

Section 5—106(2) provides that an irrevocable letter of credit cannot be modified as to the beneficiary (Percy Wilson) without its consent. Yet the trial court's action in effect modified the written terms of the letter by disregarding the fact that the partnership was the customer.

The comments by Judge Marshall in *Baker v. National Boulevard Bank* (N.D. Ill. 1975), 399 F. Supp. 1021, 1024, are pertinent: "It is often said that the obligation of the bank to pay the beneficiary is independent of the underlying transaction." As pointed out in *Baker*, the issuer's duties and rights are specifically provided for in section 5—114, "an issuer must honor a draft which complies with the terms of the relevant credit."

Section 5—114(2)(b) provides that:

> "(b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite

notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor."

There is no allegation of fraud, forgery, or other defect not apparent on the face of the letter. In fact there is no dispute over the compliance by Percy Wilson with the terms of the letter.

Section 5—114(2)(b) does authorize a "court of appropriate jurisdiction" to enjoin the honor of a letter. But as we have determined that the partnership should have been a party, as we believe the record does not support the conclusion that the plaintiff is the "customer" in this transaction, and as there is no allegation of fraud, forgery, or other defect, the applicability of section 5—114(2)(b) need not be resolved at this time. Even if this section is applicable to the case at bar, there is no authority which we have found to indicate that in deciding whether or not to issue an injunction in this type of litigation, the trial court should ignore traditional injunctive principles. The authority of the circuit court to issue injunctions is provided in section 26 of "An Act relating to the circuit courts" (Ill. Rev. Stat. 1973, ch. 37, par. 72.26). The procedure for obtaining an injunction is set forth in "An Act to revise the law in relation to injunctions" (Ill. Rev. Stat. 1973, ch. 69, par. 1 *et seq.*).

### B.

Plaintiff, in its brief, asserts that the only issue before this court is whether the trial court acted within its discretion in issuing the preliminary injunction to preserve the status quo. It is a fundamental principle that the purpose of a preliminary injunction is to preserve the status quo pending disposition of the case on the merits. The status quo to be preserved by a preliminary injunction is the last actual, peaceable, uncontested status which preceded the pending controversy. (*Duval v. Severson* (1st Dist. 1973), 15 Ill. App. 3d 634, 640-41, 304 N.E.2d 747.) A preliminary injunction is an extraordinary remedy which should be granted in the discretion of the trial court with the utmost care. (*Schwalm Electronics, Inc. v. Electrical Products Corp.* (1st Dist. 1973), 14 Ill. App. 3d 348, 352, 302 N.E.2d 394.) But as we said in *Schwalm*, "There must be a showing that irreparable harm will be done if the status quo is not maintained." 14 Ill. App. 3d 348, 354.

Thus we next examine the record to determine whether the plaintiff proved it would suffer irreparable harm or damage if the preliminary injunction was not granted. In doing so we cannot consider the merits of the case, nor decide controverted facts, but determine only whether there was a legal basis to sustain the granting of the preliminary injunction. *Summit Electric Co. v. Mayrent* (1st Dist. 1974), 17 Ill. App. 3d 545, 550, 308 N.E.2d 313.

## C.

In any action for preliminary injunction, the trial court must consider the issues as set forth in the pleadings. (21 Ill. L. & Pr. *Injunctions* §171 (1956).) As in all litigation, the burden of proof must rest on one of the parties, and in this case the burden is on the plaintiff to establish its right to injunctive relief.

■■ In the instant complaint plaintiff alleged that if Percy Wilson is permitted to cash the letters of credit, it will be immediately and irreparably injured in that it will be deprived of the use of funds represented by said letters and will suffer irreparable injury to its business credit and reputation. Assuming for the purpose of discussion that the allegation in the complaint is factual and non conclusional in nature,[4] upon Percy Wilson denying the same in its verified answer, the burden of proof on this issue rested on plaintiff. (*Cf. Centennial Laundry Co. v. West Side Organization* (1966), 34 Ill. 2d 257, 262, 215 N.E.2d 443.) We find no evidence in the record to prove that plaintiff would suffer irreparable damage if the draft on the letter is honored by State Bank. (*Summit Electric Co. v. Mayrent* (1st Dist. 1974), 17 Ill. App. 3d 545, 550-53, 308 N.E.2d 313.) It is true that when the letter is honored, Percy Wilson then has the use of the money. However, there is nothing in the record to indicate that if it is judicially determined that Percy Wilson was not entitled to the money, and plaintiff, or the partnership, obtained a money judgment, such would not be collectable from Percy Wilson. *Cf. Rao Electrical Equipment Co., Inc. v. Macdonald Engineering Co.* (1st Dist. 1970), 124 Ill. App. 2d 158, 172, 260 N.E.2d 294; *Schwalm Electronics, Inc. v. Electrical Products Corp.; Veach Oil Co. v. Ogilvie* (5th Dist. 1974), 22 Ill. App. 3d 233, 235, 317 N.E.2d 328; 21 Ill. L. & Pr. *Injunctions* §16 (1956).

Plaintiff, in its complaint, alleges it has no adequate remedy at law. The verified answer denies this allegation. Why plaintiff does not have an adequate remedy at law is not set forth in the complaint (*cf. Washingtonian Home v. Chicago* (1917), 281 Ill. 110, 119, 117 N.E. 737), nor as far as we can determine is it articulated in the record. The record does clearly establish that the entire controversy concerns a series of agreements. The letter of credit is an agreement by State Bank to pay Percy Wilson $79,274.00 if it complies with the terms of the credit.[5] Underlying the letter of credit are: (1) the January 24, 1972, mortgage

---

[4] A failure to allege facts constituting irreparable injury is of itself justification for denying a temporary injunction. While it is questionable whether the facts alleged in plaintiff's complaint constituted irreparable injury, we assume for argument that they did. 21 Ill. L. & Pr. *Injunctions* §126 (1956).

[5] The only conditions set forth in the letter is the expiration date of the letter and the requirement that Percy Wilson submit a signed certificate stating that the amount is due and owing in connection with FHA Project No. 071—35130 PM.

loan agreement, (2) the construction contract, (3) the construction loan agreement, (4) the completion assurance agreement, and (5) the promissory note with collateral as security for the letter. Plaintiff, on the one hand, asserts that the letter should be returned. Defendant claims that for various reasons it is entitled to present the letter for honor. For example, defendant claims the partnership owes it $226,768. Thus, the dispute can be easily and properly resolved in an action in law. The record indicates that the trial court, at the conclusion of the hearing, stated that the case would not be assigned the law division because "there is such interconnection between the chancery features of the case and the ultimate law issue that will be involved * * *." We fail to understand the trial court's reasoning. (*Rao Electrical Equipment Co., Inc. v. Macdonald Engineering Co.*; 21 Ill. L. & Pr. *Injunctions* §166 (1956).) We think the remedy at law in a case of this type is clear and complete. *U-Haul Co. v. Kathan* (1976), 42 Ill. App. 3d 316, 356 N.E.2d 144.

In conclusion we think the facts and circumstances in this record clearly indicate that the plaintiff has an adequate remedy at law, that it failed to establish irreparable injury or any ground for equitable relief, and therefore, that the trial court did abuse its discretion in granting the preliminary injunction.

For these reasons the judgment of the circuit court of Cook County is reversed and the cause is remanded for further action consistent with the views expressed herein.

Judgment reversed and remanded.

STAMOS, P. J., concurs.

Mr. JUSTICE JIGANTI, specially concurring:

The majority states that the threshold issue is whether the plaintiff, not described or identified in the letter of credit, is entitled to an injunction. In determining that it is not entitled to that injunction the majority concludes that it was error for the trial court to fail to join the partnership as an indispensable party and without the partnership there was not a proper party plaintiff. An indispensable party was described in *Hobbs v. Pinnell* (1959), 17 Ill. 2d 535, 162 N.E.2d 361, as one so indispensable to a decision of a case upon its merits that a final decree cannot be made without affecting his interests. I do not see how enjoining Percy Wilson and State Bank from cashing letters of credit so affects the interest of the partnership. The partnership certainly had knowledge of the lawsuit and did not seek to intervene to protect its own interest. I do not believe the record supports the conclusion that the partnership was an indispensable party whose interest had to be protected.

The majority states that the record does not support the conclusion that plaintiff is the customer under section 5—103(g). As the majority notes, plaintiff entered into the Completion Assurance Agreement with Percy Wilson and the trustee who held title to the property. That agreement provided plaintiff was required to deposit certain money as a fund. The letter of credit was secured at State Bank, by promissory notes of plaintiff which were guaranteed by Davis. State Bank also received as security the beneficial interest of a certain land trust which is not a party to these proceedings. From this evidence I conclude that plaintiff was a customer within the meaning of section 5—103(g). I do not believe that this finding affects the partnership who also may be a customer. I see no reason why there may not be more than one customer to a letter of credit.

The majority concluded that the record clearly indicates the plaintiff has an adequate remedy at law and that it failed to establish an irreparable injury or any ground for equitable relief. In this proceeding for a preliminary injunction I believe the evidence was sufficient for the trial court to find that the status quo had to be maintained. I believe, however, that the court was in error for issuing the injunction because it did not meet the requirements of section 5—114(2)(b).

Article 5 of the Uniform Commercial Code governs letters of credit. (Ill. Rev. Stat. 1973, ch. 26, par. 5—101 *et seq.*) The Draftsmen's Comment to Article 5 (UCC Rep. Serv., Uniform Code (1964), par. 5—102, UCC art. 5, at 3) states that the article does not attempt to codify all of the law of letters of credit because that would tend to stultify further development of this rather useful financing device. Uniform Commercial Code, Section 1—102(1), provides that the Code is to be liberally construed and applied to promote its underlying purposes and policies. (Ill. Rev. Stat. 1973, ch. 26, par. 1—101(1).) The Uniform Commercial Code Comment to section 5—102 says that the liberal construction canon is particularly appropriate for letters of credit because the law is still developing. Ill. Ann. Stat., ch. 26, par. 5—102, Uniform Commercial Code Comment, at 566, 567 (Smith-Hurd 1963).

A letter of credit is essentially a contract between the issuer of the credit, in this instance State Bank, and the beneficiary, in this instance Percy Wilson. This letter of credit contract is independent of the underlying agreement, in this instance Completion Assurance Agreement between the customer, Edgewater, and the beneficiary. (*Barclay's Bank D.C.O. v. Mercantile National Bank* (5th Cir. 1973), 481 F.2d 1224, *rehearing denied,* (5th Cir. 1973), 481 F.2d 1403, *cert. dismissed,* 414 U.S. 1139, 39 L. Ed. 2d 96, 94 S. Ct. 888; *Wichita Eagle & Beacon Publishing Co. v. Pacific National Bank* (D. Cal. 1971), 343 F. Supp. 332; *Fidelity Bank v. Lutheran Mutual Life Insurance Co.* (10th Cir. 1972), 465 F.2d 211; but see also White and Summers, Handbook of the Law under the

Uniform Commercial Code 607 (1972), regarding the legal nature of the letter of credit.) The relationship between the issuer and the customer is governed by Uniform Commercial Code section 5—109. (Ill. Rev. Stat. 1973, ch. 26, par. 5—109). Section 5—109(1)(a) restates one of the basic principles of the law of letters of credit: the issuing bank bears no responsibility for the performance of the underlying contract. (Ill. Ann. Stat., ch. 26, par. 5—109(1)(a), Illinois Code Comment, at 584 (Smith-Hurd 1963).) In view of the independent nature of the letter of credit the issuer is under a duty to honor drafts and demands for payment made under the letter of credit if in fact the demand complies with the terms of the letter of credit without reference to compliance with the terms of the underlying agreement. See 3 N.Y. State Law Revision Commission, 1955 Report at 1654, and the cases cited therein, hereinafter cited as Schlesinger Study; Ill. Rev. Stat. 1973, ch. 26, par. 5—114(1); *Intraworld Industries, Inc. v. Girard Trust Bank* (1975), 461 Pa. 343, 336 A.2d 316; *Fair Pavilions, Inc. v. First National City Bank* (1967), 19 N.Y. 2d 512, 281 N.Y.S.2d 23, 227 N.E.2d 839; *Ando International, Ltd. v. Woolmaster Corp.* (N.Y. S. Ct. 1966), 3 UCC Rep. Serv. 1071; *Ufitec, S.A. v. Trade Bank & Trust Co.* (1965), 21 App. Div. 2d 187, 249 N.Y.S. 2d 557, *aff'd*, 16 N.Y. 2d 698, 261 N.Y.S.2d 893, 209 N.E.2d 551; *Frey & Son, Inc. v. Sherburne Co.* (1921), 193 App. Div. 849, 184 N.Y.S. 661, *rehearing denied*, 194 App. Div. 960, 185 N.Y.S. 929; *Maurice O'Meara Co. v. National Park Bank* (1925), 239 N.Y. 386, 146 N.E. 636, 39 A.L.R. 747; *American Steel Co. v. Irving National Bank* (2d Cir. 1920), 266 F. 41, *cert. denied*, 258 U.S. 617, 42 S. Ct. 271, 66 L. Ed. 793.

Uniform Commercial Code section 5—114(2)(a)[1] governs the duty of

---

[1] Ill. Rev. Stat. 1973, ch. 26, par. 5—114. Issuer's Duty and Privilege to Honor; Right to Reimbursement.

"(1) An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary. The issuer is not excused from honor of such a draft or demand by reason of an additional general term that all documents must be satisfactory to the issuer, but an issuer may require that specified documents must be satisfactory to it.

(2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (Section 7—507) or of a security (Section 8—306) or is forged or fraudulent or there is fraud in the transaction

(a) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (Section 3—302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (Section 7—502) or a bona fide purchaser of a security (Section 8—302); and

(b) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor."

the issuer of the letter of credit to holders who, because they are not original parties to the transaction, are alluded to in the Uniform Commercial Code Comment to that section as innocent third parties. (Ill. Ann. Stat., ch. 26, par. 5—114, Uniform Commercial Code Comment, at 601 (Smith-Hurd 1963).) The case at bar does not contemplate a proceeding under subsection (2)(a), because there are no third parties. This appeal arises under subsection (2)(b). That latter section affords protection to the issuer who has been notified that the certification of the beneficiary is fraudulent, forged or has another defect not apparent on the face of the instrument. The issuer may still honor the letter of credit if it does so in good faith. In the event the issuer does honor the letter then an action by the customer against the beneficiary will lie. (Ill. Ann. Stat., ch. 26, par. 5—114, Uniform Commercial Code Comments, at 601 (Smith-Hurd 1963).) Subsection (2)(b) further provides that a court of competent jurisdiction may enjoin honor under those circumstances.

First to be considered is whether the trial court, a court of competent jurisdiction, may enjoin the issuer, State Bank, from honoring the letter of credit that it issued to Percy Wilson, the beneficiary. In doing so, an examination is necessary of that ill-defined area that exists between the principle previously mentioned, that the relationship between the beneficiary and the issuer is independent of the underlying contract between the beneficiary and the customer, and Uniform Commercial Code Section 114(2)(b) which says essentially that even though the relationship of those parties is independent of that underlying contract, the court will still look at that very contract if there is fraud, forgery or other defect. The only case interpreting section 5—114 in Illinois is *Baker v. National Boulevard Bank* (N.D. Ill. 1975), 399 F. Supp. 1021, and the facts therein make it inapropros to the case at bar. We must, therefore look to other jurisdictions and indeed plaintiff relies on the case of *Dynamics Corporation of America v. Citizens National Bank* (N.D. Ga. 1973), 356 F. Supp. 991, which interpreted that section.

Before examining *Dynamics* we should note that section 5—114(2)(b) is a codification of the case of *Sztejn v. J. Henry Schroder Banking Corp.* (1941) 31 N.Y.S. 2d 631, 177 Misc. 719. (Ill. Ann. Stat., ch. 26, par. 5—114, Illinois Code Comment at 598 (Smith-Hurd 1963).) The plaintiff in *Sztejn* was a purchaser of a quantity of bristles from the defendant in India. In order to pay for the bristles the plaintiff caused an irrevocable letter of credit to be issued to the seller-beneficiary. The letter provided that the issuing bank would pay upon the presentation of an invoice and a bill of lading covering the shipment of bristles. When the letter of credit was presented to the issuer for payment, the plaintiff brought this action to enjoin the issuer from cashing the letter. The plaintiff alleged that while the bill of lading properly described the ordered bristles, the shipment

actually contained cow hair, other worthless materials and rubbish which was intended to simulate genuine merchandise and to defraud the plaintiff-buyer. The court first commented that this matter was considered on a motion and the allegations of the complaint must be deemed as true. Therefore, it was assumed that the defendant was engaged in a scheme to defraud the plaintiff. The court noted:

> "It is well established that a letter of credit is independent of the primary contract of sale between the buyer and the seller. The issuing bank agrees to pay upon presentation of documents, not goods. This rule is necessary to preserve the efficiency of the letter of credit as an instrument for the financing of trade. One of the chief purposes of the letter of credit is to furnish the seller with a ready means of obtaining prompt payment for his merchandise. It would be a most unfortunate interference with business transactions if a bank before honoring drafts drawn upon it was obliged or even allowed to go behind the documents, at the request of the buyer and enter into controversies between the buyer and the seller regarding the quality of the merchandise shipped. * * *however, I believe that a different situation is presented in the instant action. This is not a controversy between the buyer and the seller concerning a mere breach of warranty regarding the quality of the merchandise; on the present motion it must be assumed that the seller has intentionally failed to ship any goods ordered by the buyer. In such a situation, where the seller's fraud has been called to the bank's attention before the drafts and documents have been presented for payment, the principle of the independence of the bank's obligation under the letter of credit should not be extended to protect the unscrupulous seller. * * * no hardship will be caused by permitting the bank to refuse payment where fraud is claimed, where the merchandise is not merely inferior in quality but consists of worthless rubbish, where the draft and accompanying documents are in the hands of one who stands in the same position as the fraudulent seller, where the bank has been given notice of the fraud before being presented with drafts and documents for payment, and where the bank itself does not wish to pay pending an adjudication of the rights and obligations of the other parties."

The *Dynamics* case is somewhat unusual in that the person to be secured was not the seller, but the buyer of certain armaments, the nation of India. The seller, Dynamics, was the customer who caused the bank to issue the letter of credit. The letter of credit provided that the issuer would pay out on a certification by the beneficiary, India, that "in the

exercise of reasonable discretion and in good faith that the Dynamics Corporation of America [had] failed to carry out certain obligations of theirs under the * * * agreement * * *." Dynamics sought and received a preliminary injunction enjoining the bank from honoring the letter of credit which contained the proper certification. India intervened and sought to dissolve the temporary restraining order. Their motion was denied. Dynamics' claim was that they had completed their portion of the contract and provided the goods under the contract f.o.b. its plant and it was India's responsibility to get the equipment from the plant to an Indian port. Because India had declared war against Bangladesch, the President of the United States had declared a partial arms embargo which covered the goods here and prevented the goods from being shipped. Dynamics claimed that any certification by India that Dynamics had failed to carry out its obligations must be fraudulent. The Federal Court in Georgia, using the very broad definition of fraud in equity cases under Federal law, found that there was fraud and upheld the injunction. The court considered its function and stated its task was to merely guaranty that "India not be allowed to take unconscientious advantage of the situation and run off with the plaintiff's money on a *pro forma* declaration which has absolutely no basis in fact."

Edgewater urges that the parallels between the *Dynamics* case and the instant case are obvious. Like Dynamics, Edgewater deposited its letter of credit not to insure prompt payment to a seller of goods but to provide security for the performance of contractual obligations. Like India, Percy Wilson was required to present a certificate as a prerequisite to cashing the letter of credit. Like Dynamics, Edgewater claims simply that the underlying agreement had already been formed; the required certificate, therefore, could not be properly made.

In another often cited case, *NMC Enterprises, Inc. v. Columbia Broadcasting System, Inc.* (N.Y. S.Ct. 1974), 14 UCC Rep. Serv. 1427, the court issued a preliminary injunction because of a showing of fraud in the inducement. The court also found that if the injunction were not issued there was a likelihood that the plaintiff would be forced into bankruptcy. The court characterized the transaction as tainted with intentional fraud.

In *Intraworld Industries, Inc., v. Girard Trust Bank* (1975), 461 Pa. 343, 336 A. 2d 316, the trial court refused to issue a preliminary injunction and the appellate court affirmed. The facts are inapposite to the case at bar, but the court cited both *Sztejn* and *Dynamics* and commented:

> "In light of the basic rule of independence of the issuer's engagement and the importance of this rule to the effectuation of the purposes of the letter of credit, we think that the circumstances which will justify an injunction against honor must be narrowly limited to situations of fraud in which the wrongdoing of the

beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served." 461 Pa. 343, ___, 336 A.2d 316, 324-25.

In the case at bar, plaintiff says that although it "has not employed the epithet 'fraudulent' " to Percy Wilson's conduct, it was as improper as the conduct of India in the *Dynamics* case. Indeed, there is no fraud in this case under any standard. Further, questions of bankruptcy and problems of foreign jurisdiction which seemed to weigh heavily with the courts in *Dynamics* and *NMC* are not present here. The parties are subject to the jurisdiction of this court and this dispute, and any other disputes they may have in their series of dealings, can be adequately treated in an action between the customer and beneficiary. As in the *Intraworld* case, I believe that an injunction against honor must be narrowly limited and that to allow an injunction here would be an unfortunate interference with a business transaction that was freely negotiated between the parties. The injunction against State Bank should be reversed.

The next point on appeal concerns the injunction against the beneficiary of the letter of credit, Percy Wilson. There is no separate provision of article 5 of the Uniform Commercial Code that specifically treats the relationship between the beneficiary and the customer who are the parties to the agreement underlying the letter of credit. Although that relationship is not defined, section 5—114(2)(b) still governs the issuance of the injunction. Case law on injunctions sought against the beneficiary by the customer is sparse. There are no cases in Illinois. The essential issue is, does the rationale that narrowly limits the issuance of an injunction because it unduly interferes with commerce pertain between the original contracting parties? I believe the answer is yes. The reason is that the beneficiary may have issued drafts to third parties against the letter the beneficiary holds. The most significant case in this field dates back to 1921, *Frey & Son, Inc., v. Sherburne Co.* (1921), 193 App. Div. 849, 184 N.Y.S. 661, *rehearing denied,* 194 App. Div. 960, 185 N.Y.S. 929. In that case, under circumstances that may not be quite analogous to the ones in the case at bar, the court refused to issue a temporary injunction against the beneficiary and also against the bank. The court in doing so made the following statement for which the case is frequently cited:

> "Interest of innocent parties who may hold drafts upon the Letter of Credit should not be made to suffer by reason of rights that may exist between the parties to the contract of sale in reference to which the Letter of Credit was issued. It would be a calamity to the business world if for every breach of contract between buyer and seller a party may come into a court of equity and enjoin payment on drafts drawn upon a Letter of Credit issued by a bank which owed no duty to the buyer in respect to the breach."

There is nothing in that opinion that would indicate that in fact the beneficiary had issued drafts against the letter of credit which it held. It appears as though the court was announcing a policy that it was more important that an irrevocable letter of credit once issued, be viable in the commercial world and that if anyone was to bear the risk of loss it was to be the person who caused the issuance of the letter of credit. Schlesinger Study at 1661; Ill. Ann. Stat., ch. 26, par. 5—114, Uniform Commercial Code Comment, at 601 (Smith-Hurd 1963).

I would reverse the preliminary injunctions against State Bank and Percy Wilson for the reasons stated.