**BARCLAYS BANK D.C.O.**

v.

**MERCANTILE NATIONAL BANK.**

**Civ. A. No. 15297.**

United States District Court,
N. D. Georgia,
Atlanta Division.

March 13, 1972.

---

458

Gambrell & Mobley, Atlanta, Ga., Appleton, Rice & Perrin, New York City, for plaintiff.

Haas, Holland, Levison & Gibert, Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

This diversity action is brought by Barclays Bank D.C.O. (hereinafter Barclays) to recover for the alleged wrongful dishonor by Mercantile Bank (hereinafter Mercantile) of a $280,011.65 draft upon the latter bank. The draft was presented pursuant to a writing claimed by Barclays to be both a "confirmation" by Mercantile of an irrevocable letter of credit issued in Barclays' favor, as well as an independent undertaking to honor drafts. Both parties have now filed motions for summary judgment thus presenting the Court with the problem of determining the nature of the writing in dispute.

The facts of this case for the most part appear to be uncontroverted. On or about June 1, 1970, Allied Mortgage Consultants, Inc. of Altanta, (hereinafter Allied) a customer of Mercantile's, issued to Barclays its irrevocable letter of credit in a sum not to exceed $400,000.00 for the account of Bay Holding Company Ltd. (hereinafter Bay Holding). The letter of credit provided in essence that until June 15, 1971, Barclays could draw up to $400,000.00 upon Allied for any unpaid indebtedness of Bay Holding to Barclays maturing on or

before May 31, 1971. In connection with Allied's letter of credit, Mercantile delivered to Barclays its own letter dated June 1, 1970. This writing is the basic document in question in the instant proceedings. The body of that letter reads as follows:

> "We are enclosing an irrevocable letter of credit issued by Allied Mortgage Consultants, 127 Peachtree Street, N.E., Atlanta, Georgia, dated June 1, 1970, in the amount of $400,000 in your favor for the account of Bay Holding Company Limited.

> "We can unconditionally confirm this is a valid letter of credit and that they have at all times sufficient funds to honor this commitment.

> "We hereby confirm the letter of credit and undertake to honor any drafts presented to us on or before expiration date of the letter of credit in accordance with the terms and conditions of said letter of credit." [1]

Barclays alleges that it was upon the security of the aforesaid documents that it loaned $350,000 to Bay Holding. That loan matured on May 31, 1971, and on that date, the sum of $280,011.65 became due. For that reason, on or about June 8, 1971, Barclays presented at defendant's main office drafts in the amount of $280,011.65 upon Allied in conformity with the letter of credit and upon Mercantile as a "confirming" bank. The draft on Allied was dishonored for lack of funds, and the draft on Mercantile was refused due to Mercantile's assertion that it was not liable to pay such an amount with its own funds.

Mercantile by its letter to Barclays dated June 9, 1971, stated that the draft which Barclays presented had been accompanied by "all required documentation called for in said letter of credit." Since that time, however, Mercantile through its executive vice-president has repudiated Mercantile's earlier letter by claiming that the required documentation was not in fact presented.

Barclays contends that Mercantile is liable for the total amount of $280,011.65 under the theory that Mercantile by its letter dated June 1, 1970 became a "confirming bank" as provided for by Section 109A–5–107 of the Uniform Commercial Code. If that letter did not make Mercantile primarily liable as a confirming bank, Barclays contends that Mercantile became primarily liable as an issuer of credit under Section 109A–5–103. Mercantile, on the other hand, denies that its letter of June 1, 1970 made it an issuer or a confirming bank under the definition of Section 109A–5–103 of the U.C.C. Further, Mercantile contends that if, in fact, its letter created any obligation on its part, such obligation was a guaranty. Since it has been held to be ultra vires for a national bank to issue a guaranty [Border National Bank v. American National Bank, 282 F. 73 (5th Cir. 1922) appeal dismissed and cert. denied 260 U.S. 701, 43 S.Ct. 96, 67 L.Ed. 471], Mercantile further reasons that it should escape liability altogether.

In looking first to the issue of whether or not Mercantile is a confirming bank, the Court notes that the defendant has made much of its technical interpretation of the term "confirming bank." The Court, however, cannot agree with the defendant Mercantile's strict construction in this regard. The fact that the Uniform Commercial Code provides a definition for a confirming bank with regard to a letter of credit issued by a bank [2] does not preclude the existence of a bank confirmation of a non-bank credit. See § 109A–5–102(3) Uniform Commercial Code.[3] To say oth-

---

1. The Court notes that the last paragraph of this letter was included at Barclays' insistance.

2. Section 109A–5–103(f).

3. Section 109A–5–102(3) reads:
   "This Article deals with some but not all of the rules and concepts of letters of credit as such rules or concepts have developed prior to this Act or may hereafter develop. The fact that this Article states a rule does not by itself require, imply or negate application of the same or a converse rule to a situation not provided for or to a person not specified by this Article."

erwise, would mean that a bank which does confirm a non-bank letter of credit has no legal responsibility to a party relying to its detriment on that confirmation. Such an interpretation does not conform to the principles of equity nor to the customs and practices of the banking world. Likewise, such an interpretation does not implement the theory that a liberal construction is to be given the provisions of the Uniform Commercial Code in order to accomplish its purposes.

The language used by Mercantile in its letter of June 1, implied a purpose to act as a confirming bank. Relying upon that letter, Barclays made the loan to Bay Holding with the understanding that it could look to Mercantile for primary liability under § 109A–5–107 of the Uniform Commercial Code. Therefore, the Court will not now permit Mercantile to hide behind its narrow interpretation of the term "confirming bank" in order to escape liability.

▮▮▮ The Court is of the opinion that Mercantile is equally liable under the theory that its letter of June 1, 1970 constituted a letter of credit. The language of the last paragraph of that letter indicates that Mercantile intended to "undertake to honor any drafts presented" to it. These words seem to create an independent commitment by Mercantile to pay as they comply with the Uniform Commercial Code's definition of "letter of credit." [4] In addition, it must be remembered that if any uncertainty exists as to the nature of an instrument such as the one in question here, such instrument should be construed most strongly against the writer.

▮▮▮ The fact that Mercantile now repudiates its earlier statement that

Barclays' draft had been accompanied "by all required documentation" does not lessen Mercantile's liability. The Court is not concerned at this point with whether the proper documentation was in fact given. Rather, it is the opinion of this Court that defendant Mercantile is now estopped from asserting this defense. It has been firmly established, where letters of credit are concerned, that by "formally placing its refusal to pay on one ground, the defendant must be held to have waived all others." Bank of Taiwan v. Union National Bank of Philadelphia, 1 F.2d 65, 66 (3rd Cir. 1924). See also, Railway Co. v. McCarthy, 96 U.S. 258, 267–268, 24 L.Ed. 693 (1877). Further, had the defects, if any did exist, been called to Barclays' attention promptly, Barclays could have remedied them within the specified period. To wait until after the proper time has expired to object to the documentation should not create a permissible defense.

The contention that the defendants should be liable for less than the total amount still unpaid by Allied is without merit. Although Barclays' loan to Bay Holding was evidenced by a demand note, the affidavit of Barclays' vice-president makes it clear that Barclays had agreed with Bay Holding not to call the note due for one year. For Barclays to have called due Bay Holding's note only two months after the loan was made (and before Bay Holding was in default on the note) as Mercantile suggests, would have constituted a breach of Barclays' obligation to Bay Holding.

For these reasons, the Court hereby denies Mercantile's motion for summary judgment and grants Barclays' motion for summary judgment against Mercantile in the amount of $280,011.65.

4. Section 109A–5–103(1) (a) states in part:
"Credit" or "letter of credit" means an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this Article that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit . . . "