Thompson S. **BAKER** et al., as Trustees of
Barnett Mortgage Trust,
Petitioners,

v.

**NATIONAL BOULEVARD BANK OF
CHICAGO**, a national banking associa-
tion located in the City of Chicago, State
of Illinois, et al., Respondents.

No. 75 C 1219.

United States District Court,
N. D. Illinois, E. D.

Sept. 8, 1975.

Frank O. Wetmore, II, Winston &
Strawn, Chicago, Ill., for petitioners.

John P. Coghlan, Chicago, Ill., for re-
spondents.

## MEMORANDUM OPINION

MARSHALL, District Judge.

John T. Ahern, Margaret A. Ahern, Arjack Co., and Woodfield Construction Co. (hereinafter "the Aherns") filed a verified complaint in the Circuit Court of Cook County, Chancery Division, to enjoin National Boulevard Bank of Chicago (hereinafter "Bank") from paying any money to Barnett Mortgage Trust (hereinafter "Barnett"), under a letter of credit issued by the Bank at the request of the Aherns for the benefit of Barnett. The Aherns' complaint was filed on February 13, 1975 and a preliminary injunction order was entered by the state court the same day. The Aherns and the Bank are citizens of Illinois; Barnett is a Florida trust. On March 20, 1975, the state court granted Barnett leave to intervene and it filed a motion to vacate the preliminary injunction order. On April 17, 1975, Barnett petitioned to remove the action to this court. 28 U.S.C. § 1441 *et seq.* The Aherns have moved to remand. Their motion, together with Barnett's motion to vacate the state court preliminary injunction are ready for decision.

The letter of credit stems from an underlying contract between Barnett and the Aherns. In 1973, Barnett agreed to lend $8,460,000 to the Aherns to finance construction of a condominium project. In conjunction with this loan, the Aherns obtained a letter of credit for $340,000 issued by the Bank for the benefit of Barnett. In 1974 the Aherns defaulted on the loan payments to Barnett. Barnett commenced mortgage foreclosure proceedings against the Aherns and planned to make a demand on the Bank under the letter of credit. Barnett alleges it actually drew its draft upon the Bank. Before the Bank honored the draft, the Aherns obtained the preliminary injunction against the Bank. On the same day that the preliminary injunction was issued, Barnett filed suit in this court against the Bank alleging wrongful dishonor of the letter of credit. The Bank's answer asserts that the state court preliminary injunction prevents it from honoring the letter of credit.

The issue presented is whether Barnett can remove the Aherns' action against the Bank to this court under the removal statute, 28 U.S.C. §§ 1441–47 (1970), which provides that any civil action brought in a state court of which the district courts have original jurisdiction, may be removed by the defendant or defendants.

■ ■ The Aherns first assert that Barnett waived its right to remove by intervening and contesting the state court injunction against the Bank. Although participating in the merits of a lawsuit constitutes a waiver of removal rights, taking part in preliminary action, such as pleading or opposing a preliminary injunction, does not. 1A J. Moore, *Federal Practice,* ¶ 0.157(9), at 126 (2d ed. 1974). Indeed, although Barnett did file a motion to vacate the preliminary injunction in state court, the motion was continued at Barnett's request pending this decision on the motion to remand. Thus, Barnett's actions only amount to its protecting its interest in the state court action. They are not sufficient participation to waive removal.

Next, the Aherns contend that the petition for removal is not timely. 28 U. S.C. § 1446(b) (1970) indicates how to compute the timeliness of a removal petition. If the action as originally filed is removable, the defendant must remove within 30 days of receipt of a copy of the original pleading or service of summons. If the action as originally filed is not removable, the defendant has 30 days from receipt of the pleading from which it became apparent that the case could be removed.

■ The original complaint in this action, filed on March 13, 1975, could not have been removed because diversity of citizenship was then absent, the Aherns and the Bank all being citizens of Illinois. If the action became removable, it was when Barnett filed its motion to intervene on March 20, 1975. The petition for removal was filed less

than 30 days later, on April 17, 1975. Of course, an intervening defendant should not be permitted to prolong the time for removal indefinitely by deliberately withholding a motion to intervene in state court. Here, the seven-day delay between the filing of the complaint and the filing of the motion to intervene was not unduly long. Thus, the petition for removal was timely filed.

Barnett's argument is that the Aherns' lawsuit against the Bank does not represent the true interest of the parties. If the parties were realigned according to their true interest, Barnett claims, the Aherns and the Bank would be the plaintiffs and Barnett would be the sole defendant. Complete diversity would then exist and Barnett, as sole defendant, could then remove the action.

 Barnett contends that the Bank and the Aherns should be realigned as plaintiffs because they share an interest in not honoring the letter of credit. Barnett's theory is that the Aherns want the Bank to dishonor the letter of credit because, as they claim, Barnett breached the underlying construction loan contract. The Bank does not wish to honor the letter of credit, Barnett claims, because the Bank fears it cannot recover the money it would pay to Barnett from the Aherns. In support of its allegation that the Bank and the Aherns have allied interests, Barnett notes that the Bank did not oppose the preliminary injunction entered against it.

Barnett seeks, then, to invoke an exception to the rule that an intervenor may not remove if a federal jurisdictional basis is absent from the case at the

time of intervention. *Lauf v. Nelson*, 246 F.Supp. 307 (D.Mont.1965); *Hartwell v. Texas Consolidated Oils*, 94 F. Supp. 609 (N.D.Tex.1950). Only when it is shown that the plaintiff fraudulently misjoined the parties in an effort to deprive the federal courts of jurisdiction will a federal court realign the parties at the behest of an intervenor.[1]

Barnett relies on *Real Estate Loan Co. v. Brown (Lane Cotton Mills Co.*, Intervenor), 23 F.2d 329 (N.D.Ga.1927), in which the court realigned the parties to permit removal. In that case, intervenor Lane had obtained a judgment for about $32,000 against Brown after Brown defaulted on installment payments to Lane. Then, Real Estate brought a creditor's bill for $5,000 against Brown. Real Estate moved to have a receiver appointed to protect Brown's assets and block Lane from enforcing his judgment. Both Real Estate and Brown filed cross-bills attacking the validity of Lane's judgment against Brown. Lane intervened and filed a petition for removal asserting that a separable controversy existed between Real Estate and Brown on the one hand and Lane on the other. The court decided that the creditor's bill should be disregarded because both Real Estate and Brown explicitly opposed the judgment Lane obtained against Brown. The court held that this was the only controversy and overruled the motion to remand.[2]

Barnett urges that the instant case is similar to *Real Estate* in that the Bank and the Aherns share an interest against that of Barnett, and that this dispute is the only real controversy. To

1. When the original defendant and not a defendant-intervenor seeks removal, the court may realign the parties according to their substantive interest. *First National Bank of Chicago v. Mottola*, 302 F.Supp. 785 (N.D. Ill.1969); *Union Const. Co. v. Dillingham Corp.*, 334 F.Supp. 502 (S.D.Tex.1971). Fraudulent misjoinder is not a prerequisite. It is appropriate that a court act with greater hesitation when a stranger to the original action seeks to realign the parties.

2. Professor Moore notes that this case is questionable authority today because the statutory authorization to remove on the basis of a separable controversy no longer exists. 1A J. Moore, *Federal Practice*, ¶ 0.-167(11), at 422 (2d ed. 1974). In *Real Estate*, however, the court did not remove on the basis of a separable controversy which gave the federal court jurisdiction over the entire action. Rather, the court found that the dispute between the parties as realigned was the only live issue.

evaluate Barnett's contention it is necessary to set forth a few basic principles governing letter of credit transactions found in Article 5 of the Uniform Commercial Code.

[5] A letter of credit is an engagement by a bank at the request of its customer that the bank honor drafts for payment to the beneficiary upon compliance with the conditions specified in the credit. Ill.Rev.Stat., ch. 26, § 5–103 (1973). Often, a letter of credit provides that the beneficiary must present documents of title or other documents with the draft before the bank will pay the beneficiary. That is not involved here. This is a "clean" letter of credit which requires the beneficiary to present a draft and no other documents. Article 5 applies to "clean" letters of credit only if the credit conspicuously states that it is a letter of credit. Ill. Rev.Stat., ch. 26, § 5–102 (1973). *See also*, Uniform Commercial Code Comment to § 5–102. The document in question does so state and the provisions of Article 5, Ill.Rev.Stat., ch. 26, §§ 5–101– 117 (1973) control.

■ Three separate agreements are involved in the issuance of a letter of credit by the bank for the benefit of a beneficiary. *See . Dynamics Corp. of America v. Citizens and Southern Nat. Bank,* 356 F.Supp. 991 (N.D.Ga.1973). The first is the contract between the beneficiary (Barnett) and the customer (the Aherns), which is the agreement underlying the letter of credit. Under the second contract, the customer procures a letter of credit, often from a bank, in return for consideration or collateral. The third agreement consists of the bank's agreement to pay the beneficiary the amount of the letter of credit, if the beneficiary complies with the terms of the credit.[3]

■ It is often said that the obligation of the bank to pay the beneficiary is independent of the underlying transaction. *See, e. g., Barclays Bank D.C.O. v. Mercantile National Bank,* 339 F. Supp. 457 (N.D.Ga.1972), *aff'd,* 481 F. 2d 1224 (5th Cir. 1973); *Associacion de Azucareros de Guatemala v. United States National Bank of Oregon,* 423 F. 2d 638 (9th Cir. 1970). That is, if the beneficiary under a "clean" letter of credit presents a draft to the bank, the bank must pay the beneficiary without regard to the beneficiary's performance in its underlying contract with the bank's customer. The only defense the bank may assert is fraud in the formation of the underlying contract. *NMC Enterprises, Inc. v. CBS,* 14 UCC Rep.Serv. 1427 (Sup.Ct.N.Y.1974). Neither party has alleged fraud here. Both the Aherns and Barnett have only charged each other with breach of performance. In these circumstances the issuer's sole obligation to its customer is to carefully inspect the draft presented by the beneficiary to make sure it is not a fraud or a forgery.

■ In its claim that the Bank and its customer Ahern both oppose payment of the draft, Barnett disregards the true nature of the letter of credit transaction. There is no authority giving an issuer the right to refuse to pay a beneficiary if the issuer fears it cannot collect from its customer. Rather, the issuer's duties and rights are specifically provided for in Ill.Rev.Stat., ch. 26, § 5– 114 (1973): "an issuer must honor a draft which complies with the terms of the relevant credit." The statute also provides that "an issuer which has duly honored a draft or demand for payment is entitled to immediate reimbursement" from the customer. *Id.* The actual legal situation, then, is that the Bank's interests were adverse to those of its customer

---

3. Professors White and Summers note that the bank issuer's obligation to the beneficiary is not, strictly speaking, contractual because the issuer and beneficiary do not voluntarily enter into an agreement. J. White and R. Summers, *Uniform Commercial Code,* § 18–2 at 607 (1972). Nevertheless, the bank has a firm duty to pay the beneficiary.

Ahern. Had the Bank honored the letter of credit, it would have had a right of action against the Aherns under § 5–114. In fact, the Bank states in its answer to Barnett's complaint for wrongful dishonor in federal court that it refused to honor the letter of credit only because it was complying with the state court injunction, obtained before Barnett made its formal demand for payment. Civ.No. 75 C 382.

In conclusion, the case should be remanded to the Circuit Court of Cook County, Illinois, because it was nonremovable. The original alignment of the parties, the Aherns plaintiffs and the Bank defendant, represents their actual legal interest. Although the intervenor-defendant, Barnett, is a Florida citizen, complete diversity of citizenship is lacking.

Because this court lacks jurisdiction over the subject matter, the validity of the state court preliminary injunction cannot be decided here.

An order will enter remanding the action to the Circuit Court of Cook County, Illinois.