Michael L. FISHER, Thomas Fisher, Eugene Fisher, Dickinson Ready Mix, a North Dakota corporation, Fisher Industries, Inc., a North Dakota corporation, International Technical Coatings, Inc., an Arizona corporation, Johnnie L Caldwell, Plaintiffs,

v.

DAKOTA COMMUNITY BANK, a bank licensed and existing under the laws of North Dakota, and Thyssen Mannesmann Handel GmbH, a German corporation, Defendants.

No. A1–05–100.

United States District Court,
D. North Dakota,
Southwestern Division.

Dec. 2, 2005.

Michael J. Maus, Hardy Maus & Nordsven PC, Dickinson, ND, Albert J. Hardy, Larry L. Boschee, Pearce & Durick, Bismarck, ND, for Plaintiffs.

David D. Schweigert, Bucklin Klemin & McBride, Lyle W. Kirmis, Zuger Kirmis & Smith, Bismarck, ND, for Defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION

HOVLAND, Chief Judge.

Before the Court are two motions to remand filed by the Plaintiffs on September 30, 2005. On October 5, 2005, defendant Dakota Community Bank joined the motion to remand. On October 31, 2005, the Court referred the motions to Magistrate Judge Charles S. Miller, Jr., for a Report and Recommendation. On November 7, 2005, Judge Miller issued a Report and Recommendation wherein he recommended the motions to remand be granted because (1) Dakota Community Banks is both a necessary and a real party in interest to one or more of the claims set forth in the amended complaint and not a nominal party whose presence may be ignored for purpose of determining jurisdiction; (2) complete diversity of citizenship is lacking and no other jurisdictional grounds for removal has been asserted; (3) Dakota Community Bank is a citizen of the State of North Dakota, which prohibits removal under 28 U.S.C. § 1441(b); and (4) Dakota Community Bank's failure to join in Thyssen's removal as required by § 1441 also prohibits removal. Defendant Thyssen filed an objection on November 23, 2005.

The Court has carefully reviewed the Report and Recommendation, relevant case law, the objections of Defendant Thyssen, and the record as a whole, and finds the Report and Recommendation to be persuasive. Accordingly, the Court **ADOPTS** the Report and Recommendation (Docket No. 24) in its entirety and **GRANTS** the Plaintiffs' Motions to Remand. (Docket Nos. 3, 6–2). The Court **DENIES** as moot the Plaintiffs' Motion for Leave to File a Second Amended Complaint (Docket No. 6–1) and Defendant Thyssen Mannesmann Handel GmbH's Motion to Dismiss (Docket No. 8).

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION RE MOTIONS TO REMAND

MILLER, United States Magistrate Judge.

Before the court are plaintiffs' and defendant Dakota Community Bank's motions to remand (Doc. Nos 3, 6, and 11). For the reasons set forth below, it is recommend that the motions to remand be granted.

## I. BACKGROUND

In June 2004, plaintiff International Technical Coatings, Inc. ["ITC"] contracted with German defendant Thyssen Mannesmann Handel GmbH ["Thyssen"] for the purchase of steel that would be produced by a third party in China and then shipped to the United States ["Purchase Contract"]. Pursuant to the Purchase Contract, ITC provided Thyssen with a letter of credit issued by defendant Dakota Community Bank ["Dakota Bank"], a bank licensed and existing under the laws of the State of North Dakota, in the amount of $3,583,356.84. The letter of credit was guaranteed by the remaining plaintiffs, who are either North Dakota residents (Dickinson Ready Mix, Michael L. Fischer, and Eugene Fischer) or Arizona residents (Thomas Fischer and Johnnie L. Caldwell).

The letter of credit provides that Thyssen can demand payment upon presenting Dakota Bank with certain documentation as prescribed in the letter. It appears the letter of credit was chosen as the primary means of making payment for the steel and that it was not intended to be a guarantee of payment that would be made by some other method.

Thyssen arranged for the shipment of the steel from China to the United States. While there is some discrepancy in the dates, it appears the steel arrived in Houston, Texas early in October 2004 and that, prior to its arrival, Thyssen submitted a bill of lading to Dakota Bank intending to trigger payment on the letter of credit.

Before Dakota Bank acted on the demand for payment, disputes arose over the quality of the steel and whether the steel had been delivered to the proper location. Initially, Thyssen refrained from drawing on the letter of credit while attempts were made to resolve the disputes. However, when matters did get resolved and Thyssen insisted on payment, plaintiffs filed their complaint in state district court in North Dakota in January 2005 naming both Thyssen and Dakota Bank as defendants.

In their complaint, plaintiffs alleged not only that the steel was defective and unusable for the intended purpose, but also that Thyssen's alleged lack of performance amounted to fraud. Further, plaintiffs also claimed that the steel had not been shipped to the required location and that the documents submitted to trigger payment on the letter of credit were false and fraudulent. As part of their requests for relief, plaintiffs asked that the Bank be temporarily and permanently enjoined from making payment to Thyssen.

On January 12, 2005, the state district court issued a temporary restraining order prohibiting Dakota Bank from paying on the credit. At the same time, the court scheduled a show cause hearing for February 25, 2005.

Dakota Bank answered the complaint on January 17, 2005. On February 11, 2005, plaintiffs obtained leave of court to serve and file an amended complaint. The amended complaint retains the claims that had already been asserted against Thyssen and Dakota Bank in the initial complaint. The primary change is the addition of claims against Thyssen with respect to two additional shipments of steel that do not involve Dakota Bank since its letter of credit covers only the first shipment.

The amended complaint seeks the following relief as to the first shipment of steel covered by Dakota Bank's letter of credit: (1) a declaratory judgment that (a) the steel does not meet the contract requirements and is unusable for the intended purpose, (b) that the steel was not delivered to the location required, (c) that the documents presented to Dakota Bank to draw on the letter of credit are false and fraudulent, (d) that the terms of the letter of credit were not complied with,

and (e) that payment or honoring of the letter of credit would amount to a fraud upon the plaintiffs; (2) temporary and permanent injunctive relief prohibiting Dakota Bank from making payment on the letter of credit; and (3) "cover" damages from Thyssen for the increased costs allegedly incurred in having to buy replacement steel.

On February 22, 2005, Thyssen filed a special appearance claiming lack of personal jurisdiction. At the same time, Thyssen filed a motion to dismiss and, in the alternative, to lift and deny the preliminary injunction. Among other things, Thyssen argues in its moving papers: (1) lack of personal jurisdiction; (2) improper venue on account of a forum-selection clause in the Purchase Contract that purportedly requires all disputes be resolved, at Thyssen's option, either before a German court or an Arizona court; (3) that the steel was shipped to a proper location; and (4) that the documents submitted to collect on the letter of credit were not false and fraudulent.

Following a show cause hearing held on February 25, 2005, the state district court denied Thyssen's motion to lift the temporary restraining order on March 1, 2005. In a separate order issued on March 7, 2005, the state court indefinitely extended plaintiffs' time to respond to Thyssen's motion to dismiss in order to allow plaintiffs time to conduct discovery relevant to the motion.

Meanwhile, plaintiffs filed a motion for an order for court-directed service of the amended complaint upon Thyssen's attorneys. Among other things, plaintiffs argued that Thyssen had made what amounted to a general appearance so that personal service, including service pursuant to the Hague Convention, was unnecessary.

On April 4, 2005, the district court denied plaintiffs' motion for court-directed service upon Thyssen's attorneys stating that service would have to be made in accordance with the Hague Convention. The court did order, however, that the restraining order would remain in place to preserve the status quo until service would be accomplished and discovery on the motion to dismiss completed.

On September 21, 2005, plaintiffs filed a motion for leave of court to file a second amended complaint that would add as additional parties: (1) St. Paul Fire and Marine Insurance Company d/b/a St. Paul Travelers, a Minnesota corporation, ["St. Paul"]; (2) Farmer–Butler–Leavitt Insurance Agency, an Arizona insurance agency, ["Farmer–Butler"]; and (3) Jim Farmer, an Arizona insurance agent and a principal of Farmer–Butler. Plaintiffs also sought expedited consideration from the state court on the motion contending there was a time limitations problem. On September 23, 2005, the state district court entered an order giving the defendants until September 28, 2005, to respond to the motion to amend.

On September 27, 2005, Thyssen removed the action to this court claiming diversity jurisdiction as the basis for removal despite Dakota Bank also being a named defendant. (Doc. No. 1 and attachments) In its notice of removal, Thyssen contends that Dakota Bank's presence can be ignored for jurisdictional purposes because it is only a nominal party. (Doc. No. 1)

On September 30, 2005, plaintiffs filed a motion with this court for a summary ruling on the pending motion for leave to file the second amended complaint contending that the motion was ripe because neither defendant had filed an objection before the deadline set by the state district judge. (Doc. No. 6) Plaintiffs also moved to remand the action to state court on two grounds. (Doc. Nos. 3 & 4) The first is

that the addition of the new defendants would destroy diversity in that several of the new defendants are North Dakota residents or resident corporations. The second is that Thyssen's removal of the action was untimely because Thyssen had made what amounted to a general appearance more than 30 days prior to removal.

On October 4, 2005, the undersigned issued an order (Doc. No. 7) indicating the court would hold a telephone conference on October 5, 2005, to discuss plaintiffs' pending motions, as well as the undersigned's concern that the Dakota Bank may be more than a nominal party and should have been counted in determining whether removal was proper. Later that same day, Thyssen filed a preliminary response opposing plaintiffs' motions and, in the alternative, its own motion to dismiss mirroring the motion it had already filed with the state district court, which had been placed on hold pending service upon Thyssen and plaintiffs having had an opportunity to conduct discovery. (Doc. Nos.8–9) In its response to plaintiffs' motions, Thyssen stated that it had not been properly served with the motion for leave to file the second amended complaint prior to the action being removed and requested additional time to respond to plaintiffs' motion, as well as additional time to respond to the jurisdictional issue raised by the court.

On October 5, 2005, Dakota Bank joined in plaintiffs' request for remand arguing that it is more than a nominal party and that diversity jurisdiction is lacking. (Doc. No. 11) On the same date, the undersigned held a telephone conference with the parties to discuss the pending motions and the court's own concerns regarding jurisdiction. After considering the arguments of counsel, the undersigned determined it would be inappropriate under the circumstances to rule on the motion for leave to file the second amended complaint until

the court resolved the issue of whether the removal was proper and allowed the parties an opportunity to file supplemental briefs with respect to plaintiffs' pending motions and the jurisdictional issue raised by the court. (Doc. No. 14)

In the supplemental briefs that have been filed, plaintiffs and Dakota Bank contend that Dakota Bank is more than a nominal party and that the removal was improvident. (Doc. Nos. 18, 19 & 22) Thyssen disagrees. (Doc. Nos. 20 & 21)

## II. DISCUSSION

### A. Whether Thyssen's removal of the action was timely

█ Under 28 U.S.C. § 1441, the notice of removal must be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which the action is proceeding. The Supreme Court has interpreted this language as requiring official service to commence the 30–day time period. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350–352, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999); *Marano Enterprises of Kansas v. Z–Teca Restaurants, L.P.*, 254 F.3d 753, 756–757 (8th Cir.2001). Consequently, the fact that Thyssen may have informally received copies of the pleadings more than 30 days prior to removal does not make the removal untimely.

█ Plaintiffs do not dispute this point, but argue that Thyssen waived its right to service by making what amounted to a general appearance more than 30 days prior to removal. The problem with this argument, however, is that plaintiffs presented the very same waiver argument in support of their motion to the state court for alternative service and lost that motion. While it is true the state court did not

explicitly address the waiver argument in its memorandum decision, the issue was briefed and implicitly rejected when the state court concluded that service pursuant to the Hague Convention was required.

Plaintiffs argue, in the alternative, that this court can revisit the issue notwithstanding the state court's decision. However, even if this court has the power to do so, it should not. A review of the state-court record indicates that Thyssen asserted from the very beginning that it was specially appearing to contest jurisdiction, and the state court's implicit determination that Thyssen's conduct did not amount to a general appearance under North Dakota law is not unreasonable. Consequently, plaintiffs' argument that the removal was untimely should be rejected.

**B. Whether removal was improvident because of Dakota Bank's presence as a party defendant.**

Under 28 U.S.C. § 1441(a), an action in state court may be removed to the federal district court in which the action is pending if the federal court would have original jurisdiction. *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525(1997). When the basis for original jurisdiction is diversity jurisdiction, 28 U.S.C. § 1332, requires "complete diversity," *Carden v. Arkoma Associates*, 494 U.S. 185, 187, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), and § 1441(b) imposes the additional requirement that none of the defendants may be citizens of the state in which the action is brought. Also, § 1441 requires that all defendants must join in the removal. *Marano Enterprises*, 254 F.3d at 754 n. 2.

 Upon motion for remand, the burden of proving a jurisdictional basis for removal is upon the removing party and any doubt about jurisdiction must be resolved in favor of remand. *In re Business Men's Assurance Co. of America*, 992 F.2d

181, 183 (8th Cir.1993). Further, an order for remand is generally not reviewable. *Id.* at 182.

In this case, it is not disputed that Dakota Bank and several of the plaintiffs are North Dakota citizens. Consequently, unless some exception applies, it must be concluded that the removal was improvident based on: (1) the lack of complete diversity, (2) the failure to satisfy the requirement of § 1141(b) that none of the defendants be citizens of the state in which the action is pending, and (3) Dakota Bank's failure to join in the removal. The only grounds offered by Thyssen to overcome these several jurisdictional defects is that Dakota Bank is a nominal party whose presence can be disregarded.

The United States Supreme Court has long held that a federal court can disregard those who are merely nominal or formal parties for purposes of determining jurisdiction. In *Wood v. Davis*, 59 U.S. 467, 18 How. 467, 15 L.Ed. 460 (1855), the Court summarized the rule as follows:

> It has been repeatedly decided by this court, that formal parties, or nominal parties, or parties without interest, united with the real parties to the litigation, cannot oust the federal courts of jurisdiction. . . .

*Id.* at 451; *see also Salem Trust Co. v. Manufacturers' Finance Co.*, 264 U.S. 182, 184, 44 S.Ct. 266, 68 L.Ed. 628 (1924) (mere stakeholder with no interest in the funds held to be a nominal party); *Bacon v. Rives*, 106 U.S. 99, 1 S.Ct. 3, 27 L.Ed. 69 (1882) (executor of an estate held to be a nominal party when the executor had no personal interest in the outcome and was named only so that the court might later grant relief as to the estate assets); *Carneal v. Banks*, 10 Wheat. 181, 23 U.S. 181, 6 L.Ed. 297 (1825) (named heirs-at-law held to be formal parties because their presence was not indispensable and no

claim could be brought affecting their interests).

Conversely, however, the Supreme Court has repeatedly held that parties who have a real interest in the litigation, who are the subjects of a real cause of action, or who are otherwise necessary or indispensable parties will not be considered merely nominal or formal parties. *E.g., Carden v. Arkoma Associates, supra* (the citizenship of all partners of a limited partnership must be considered in determining diversity, not just the general partners, even though the limited partners would have no liability); *Massachusetts & S. Const. Co. v. Township of Cane Creek,* 155 U.S. 283, 15 S.Ct. 91, 39 L.Ed. 152 (1894) (stakeholder who was an indispensable party to the litigation not a nominal party); *Crump v. Thurber,* 115 U.S. 56, 5 S.Ct. 1154, 29 L.Ed. 328 (1885) (corporation was an indispensable, and not nominal party, in a suit between private parties over stock ownership because the relief requested included requiring the corporation to make adjustments in its stock ownership rolls and issue new shares of stock).

Consequently, most lower federal courts have limited the "exception" for formal or nominal party defendants to situations in which it is clear that the defendant is not a necessary or an indispensable as a matter of law, the party has nothing at stake in the litigation, and no real, present claim for relief is being sought against the party. *E.g., Thorn v. Amalgamated Transit Union,* 305 F.3d 826, 833–834 (8th Cir.2002) (parent union held to be a nominal party in suit against local chapter when no relief could be obtained from the parent union); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 369 (7th Cir.1993) (parent company was probably a nominal party because no reasonable basis existed for predicting it would be held liable); *SEC v. Cherif,* 933 F.2d 403, 414 & n. 13 (7th Cir.1991) (a person who has an ownership stake in the funds in dispute or who is a necessary or

indispensable party cannot be a nominal party); *Matchett v. Wold,* 818 F.2d 574, 576 (7th Cir.1987) (the "addition to a lawsuit of a purely nominal party—the holder of the stakes of the dispute between the plaintiff and the original defendant—does not affect diversity jurisdiction."); *Pecherski v. General Motors Corp.,* 636 F.2d 1156, 1161 (8th Cir.1981) (a party "against whom no real relief is sought" may be a nominal party).

One federal-court treatise has summarized the law in this area as follows:

As a matter of federal law, a plaintiff must base diversity jurisdiction on the citizenship of real and substantial parties to the controversy. A federal court must therefore disregard nominal or formal parties and determine jurisdiction only with respect to the citizenship of real parties to the controversy.

Nominal parties are generally those without a real interest in the litigation. A-real-party-in-interest defendant is one who, according to applicable substantive law, has the duty sought to be enforced or enjoined. In contrast to a real party in interest, a formal or nominal party is one who, in a genuine legal sense, has neither an interest in the result of the suit, nor an actual interest in or control over the subject matter of the litigation. Stated differently, a nominal defendant is a person who can be joined to aid the recovery of relief without an additional assertion of subject matter jurisdiction only because the defendant has no ownership interest in the property that is the subject matter of the litigation. Because a nominal defendant has no ownership interest in the funds at issue, once the district court has jurisdiction over the litigation regarding the conduct that produced the funds, the court need not separately obtain jurisdiction over the claim to the funds held by the nomi-

nal defendant. Rather, the defendant is joined solely as a means of facilitating collection.

15 Moore's Federal Practice—Civil at § 102.15 (footnotes omitted).

■ In this case, Thyssen relies primarily upon the "rule of independence" relating to letters of credit for its argument that Dakota Bank is only a nominal party. Under the rule of independence, an issuing bank's obligation to make payment on an unconditional letter of credit is independent of the obligations of the underlying transaction and generally not subject to the claims and defenses of the applicant with respect to that transaction. *E.g., Bank of Newport v. First National Bank and Trust Co. of Bismarck,* 687 F.2d 1257, 1261–62 (8th Cir.1982); *KMW International v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 15–17 (2nd Cir.1979); *W.O.A., Inc. v. City National Bank of Fort Smith, Arkansas,* 640 F.Supp. 1157, 1158 (W.D.Ark.1986); *Baker v. National Boulevard Bank of Chicago,* 399 F.Supp. 1021, 1024–25 (N.D.Ill.1975); *see generally* 50 Am.Jur.2d *Letters of Credit* §§ 35–37. Based on the rule of independence, it *may* be possible in certain cases when an applicant sues a beneficiary on the underlying transaction to make an argument that the issuing bank is only a nominal party, *e.g.,* when no real, present claim for relief is made against the issuer and the issuer is named only to defeat diversity.

■ However, such is not the case here. This is because fraud is a recognized exception to the rule of independence. *E.g., Bank of Newport,* 687 F.2d at 1262–65; *KMW International,* 606 F.2d at 16; *W.O.A., Inc.,* 640 F.Supp. at 1158–59; *Baker,* 399 F.Supp. at 1024; *see generally* 50 Am.Jur.2d *Letters of Credit* §§ 58–71. When fraud is claimed, most jurisdictions recognize the right of an applicant to seek injunctive relief against the issuing bank prohibiting payment on the letter of credit.

Also, fraud is one of the few grounds upon which an issuing bank can refuse to make payment. *See id., see generally* 50 Am. Jur.2d *Letters of Credit* §§ 35–37, 58–71.

N.D.C.C. §§ 41–05–09, which is derived from U.C.C. Rev. Art. 5, § 5–109, codifies the fraud exception in North Dakota. *See Bank of Newport,* 687 F.2d at 1261–62 (applying a prior version of North Dakota law). Under this section, an applicant may seek injunctive relief against the issuing Bank. In relevant part, N.D.C.C. § 41–05–09(2) reads a follows:

If an applicant claims that a required document is forged or materially fraudulent or that honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant, a court of competent jurisdiction, temporarily or permanently, may enjoin the issuer from honoring a presentation or may grant similar relief against the issuer or other persons . . . .

■ In this case, plaintiffs seek, in part, to enjoin Dakota Bank from making payment based on allegations of fraud with respect to both the underlying transaction and the presenting documents. Given the provisions of § 41–05–09(2), this is a real and present claim against a statutorily-authorized defendant, which, based on the law previously cited, makes Dakota Bank more than a formal or nominal party. *See also W.O.A., Inc., supra* (refusing to realign an issuing bank for purposes of jurisdiction upon claims of fraud, noting that the claims against the bank were real and substantial, and ordering remand); *Baker, supra* (refusing to realign an issuing bank for purposes of jurisdiction in a non-fraud case and ordering remand).

Thyssen argues, however, that the real controversy lies in plaintiffs' claims against it and that Dakota Bank is not an indispensable party to these claims. This argument, however, misses the mark. It might

very well be that Dakota Bank is not an indispensable party to plaintiffs' claims against Thyssen. Further, in terms of the overall dispute, Dakota Bank probably is a secondary player. But, neither of these things negate an applicant's right under North Dakota law to seek injunctive relief based upon claims of fraud, nor does it make the issuer (a statutorily-authorized defendant as to such claims) a mere nominal party.

In fact, at the same time Thyssen argues Dakota Bank is only a nominal party, it also argues that it (Thyssen) cannot be sued in this action because of the lack of personal jurisdiction and because venue is improper due to a forum-selection clause in its agreement with ITC. If Thyssen is correct and is dismissed (at the time of removal the state court had not ruled on these issues), this would leave only plaintiffs' statutorily-authorized claims for injunctive relief against Dakota Bank with Dakota Bank being the only defendant. This is another indication of why the Dako-ta Bank is more than a formal or nominal party in that it would be specious to claim that the only party defendant to a case is a nominal defendant.[1]

Also, another fundamental reason why Dakota Bank is more than a nominal party is the fact that its own funds are at risk. If a permanent injunction is issued, Dakota Bank will be out no money. On the other hand, if Thyssen is ultimately allowed to collect, payment will come from Dakota Bank's own funds. Based on the authority previously cited with respect to formal or nominal parties, the fact that Dakota Bank's own funds are risk means it has a substantial interest in the outcome, making it a real party in interest and not a nominal or formal party.

In fact, the risks and interests of Dakota Bank are several. First, there is the risk that, if it honors the letter of credit and makes payment to Thyssen, it may not recover back all of what it paid out because the plaintiffs are not good for it. In fact, while not dispositive, Dakota Bank

---

**1.** Thyssen argues that Dakota Bank can never be a sole party defendant because it (Thyssen) is an indispensable party to plaintiffs' claims against Dakota Bank. Consequently, Thyssen argues the entire action must be dismissed. However, the Ninth Circuit, under very similar circumstances, has rejected the argument that the beneficiary of a letter of credit is an indispensable party to an action by an applicant against an issuer for injunctive relief. *Hendricks v. Bank of America, N.A.*, 408 F.3d 1127 (9th Cir.2005). Further, Thyssen's argument ignores ITC's statutory right to seek injunctive relief and the fact that there is no other court that likely would have jurisdiction over the Dakota Bank. *Moog World Trade Corp. v. Bancomer, S.A.*, 90 F.3d 1382, 1386 (8th Cir.1996) (issuing bank cannot be required to appear in a distant forum based solely upon its obligation to make payment to the beneficiary citing numerous cases). Under Rule 19(b) of both the Federal and North Dakota Rules of Civil Procedure, the lack of other available remedies is a substantial factor in deciding whether a party is indispensable.

Thyssen also argues that Dakota Bank is subject to the forum-selection clause in the contract between it and ITC and that Germany is the only venue where this matter can be litigated. However, this is disputed by both the plaintiffs and Dakota Bank and the state court had not yet ruled on the issue. Further, the fact that the contract between ITC and Thyssen contains a forum-selection clause does not mean its scope necessarily extends to claims for injunctive relief against the issuer or that it can bind a person who is not a party to the contract. *See Hendricks*, 408 F.3d at 1137–1139; *cf. Moog World Trade Corp.*, *supra.*

In view of the foregoing, the dismissal of Dakota Bank is by no means a virtual certainty if the claims against Thyssen are dismissed. And, the fact Dakota Bank could be the sole defendant under this circumstance, and also if it was the only party sued initially, further demonstrates why it is more than a nominal party.

claims in this case that it will suffer a financial loss if it is required to make payment. Second, if payment is made, there are the costs and delays that may be attendant to any collection effort against the plaintiffs. Third, given plaintiffs' claims of fraud and the fact it has been put on notice of these claims, Dakota Bank potentially could face a defense of lack of good faith in any collection action against the plaintiffs should it honor the letter of credit and it is ultimately determined that Thyssen was not entitled to payment as a result of the claimed fraud. *See* N.D.C.C. §§ 41–05–09(1)(b) (protecting an issuer with respect to payment in such a situation only when the payment is made in good faith) & 41–05–11(2) (subjecting an issuer to claims of damages incurred by the applicant in the event of a breach by the issuer of its obligations including incidental damages and attorney fees). Fourth, when fraud is present, Dakota Bank has the right in certain instances to refuse payment. N.D.C.C. §§ 41–05–08(4) & 41–05–09(1); *see Bank of Newport,* 687 F.2d at 1262–65 (construing an earlier version of North Dakota law); *see generally* 50 Am.Jur.2d *Letters of Credit* §§ 58–71.

Thyssen relies principally upon two federal district court cases for its conclusion that Dakota Bank is only a nominal party. However, both cases are distinguishable. Further, several of the arguments employed in those cases (if not also the ultimate results) appear to be contrary to the weight of established authority.

One of the cases is *Selfix, Inc. v. Bisk,* 867 F.Supp. 1333 (N.D.Ill.1994). In *Selfix,* the applicant of the letter sued the beneficiary in state court requesting a declaration that the beneficiary had breached the agreements that were the basis of the underlying transaction thereby releasing the applicant of its obligations. The applicant also named the issuing bank and requested an injunction preventing it from honoring the letter. After the beneficiary removed the action to federal court, the applicant moved to remand arguing that the presence of the issuer in the action destroyed diversity. The court denied the motion to remand concluding the issuer in that case was merely a nominal party to what it considered to be simply a dispute between the applicant and the beneficiary.

*Selfix,* however, is readily distinguishable because the request for injunctive relief in that case was based upon a claim that the beneficiary had defaulted in its obligations to the applicant generally, and there was no claim of fraud. Consequently, regardless of what might otherwise be the merits of the court's conclusions that the issuer in *Selfix* had no real interest and was not a necessary party, the situation in the instant case is different because of the claims for fraud, the statutory right to seek injunctive relief against Dakota Bank, and the fact Dakota Bank is both a necessary and a real party in interest, at least with respect to the claim for injunctive relief.

It might be possible to justify the result in *Selfix* based upon an argument that the applicant had no present claim for injunctive relief against the issuing bank as a matter of law because no claim for fraud had been made and fraud is about the only time such relief is granted. *But see Baker, supra* (refusing to realign the issuing bank as a party plaintiff and ordering remand in a non-fraud case). To the extent, however, that *Selfix* can be read to support a conclusion that an issuer of a letter of credit is *per se* always a nominal party, and never a real party in interest, such a conclusion is beyond the weight of authority for the reasons already articulated, at least when fraud is claimed. Further, the cases cited by *Selfix* (none of which deal with letters of credit) do no support such a sweeping conclusion. *See Salem Trust,*

*supra*, (holding only that stakeholder with whom the funds in dispute had been deposited was a nominal party); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir. 1993) (holding that a parent company was "probably" a nominal party because no apparent claim had been made against it); *SEC v. Cherif*, 933 F.2d 403 (7th Cir.1991) (remanding to determine whether the account at issue had been set up by a third party without the account holder's knowledge or whether the account holder had participated with the third party in committing an alleged fraud because, if the first was true, the account holder could be deemed a nominal party, but, if the second was true, the account holder would not be a nominal given the ownership interest in the account).

The *Selfix* court also suggests that the issuer of the letter of credit in that case had no real interest in the subject matter of the suit because, if the applicant won, the issuer would not have to make payment and, if the beneficiary won, the issuer would make payment, but would then be able to recover what it paid out from the applicant. None of the cases cited by *Selfix*, however, support the novel proposition that a party with its own funds at risk is not a real party in interest if there is a possibility it can recover its losses by suing others. Such a proposition is directly contrary to reasoning and ultimate holding in *SEC v. Cherif*, upon which the *Selfix* court principally relies, not to mention the established weight of the authority previously cited with respect to nominal parties. The 7th Circuit in *Cherif* expressly stated the following:

> By definition a nominal defendant cannot be a "necessary" or "indispensable" party, as those terms are used in Fed. R.Civ.P. 19. See *Salem Trust Co. v. Manufacturers' Finance Co.*, 264 U.S. 182, 188–200, 44 S.Ct. 266, 266–71, 68 L.Ed. 628 (contrasting indispensable parties with mere nominal parties). A

necessary party is one who "claims an interest relating to the subject of the action." Fed.R.Civ.P. 19(a). *A nominal defendant, as will be explained, has no interest in the property that is the subject of the litigation.*

933 F.2d at 414 n. 13 (emphasis added).

The other case relied upon by Thyssen is *Hamilton v. Central National Bank of Cleveland*, 40 UCC Rep.Serv. 1008, 1984 WL 178950 (N.D.Ohio 1984). In that case, the applicant of the letter of credit sued the issuer in state court seeking to enjoin payment on the letter. Although the facts are sparse, it appears the grounds alleged for the injunction in that case included fraud in the underlying transaction. After the state district court issued a temporary injunction, the beneficiary intervened and removed the action to federal court. The applicant then made a motion to remand based upon the grounds that the issuer was a citizen of the same state as the plaintiff. The court denied the motion holding that the issuer was merely a stakeholder and a real party in interest, citing the Supreme Court's decision in *Salem Trust, supra*. At the same time, however, the court also dismissed the temporary injunction that had been entered by the state court on the basis that the applicant had failed to prove fraud.

Consequently, *Hamilton* is distinguishable for the same reason as *Selfix*, *i.e.*, the absence of a viable claim for injunctive relief based on fraud against the issuer. In *Selfix*, no such claim was made. In *Hamilton*, the court dissolved the temporary injunction because no fraud had been proved and at the same it denied the motion for remand—essentially eviscerating any real, present claim against the issuing bank.

As with *Selfix*, it might be possible to justify the ultimate holding in *Hamilton* that the issuing bank was a nominal party

based upon the lack of a viable claim of fraud. However, the suggestion in *Hamilton* that an issuer of a letter of credit is a nominal party because it is a mere stakeholder is highly questionable.

The only case that *Hamilton* cites in support of the proposition that an issuer of a letter of a credit is a mere stakeholder is the Supreme Court's decision in *Salem Trust, supra.* However, the "stakeholder" in *Salem Trust* was not a party that had its own funds at risk; it was merely the holder of disputed funds that had been deposited with it by the contesting parties. This is substantially different from an issuer of a letter credit who must make payment out of its own funds and then hope it can recover later what it has paid out from the applicant.

The Supreme Court, and most lower federal courts, have found a "stakeholder" to be a formal or nominal party only when (1) the party is a true stakeholder, *i.e.*, the property at issue belongs to other persons and not the stakeholder, (2) no substantial claim for relief is being made as to that party, and (3) the stakeholder is not otherwise a necessary or indispensable party as a matter of law. *E.g., Salem Trust Co., supra* (stakeholder of funds deposited with it by the other contesting parties was a nominal party given that no present cause of action presently existed against it and that it was not an indispensable party as a matter of state law, distinguishing *Massachusetts & S. Const. Co., supra*, in which the Supreme concluded the stakeholder was a real party in interest and not a nominal or formal party); *Wood v. Davis*, 59 U.S. at 470, 18 How. 467 (holding that agents and attorneys were nominal parties and not stakeholders against whom an equitable claim has been made); *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867 (9th Cir.2000); *Matchett v. Wold, supra; see generally* 15 Moore's Federal Practice—Civil § 102.15. The

proposition that an issuer of a letter of credit is a stakeholder, whose presence in the action can be ignored for that reason alone, is contrary to the weight of authority. It also ignores the financial risks and interests of the issuer.

Finally, Thyssen argues that remand would trample on the rule of independence and destroy the commercial utility and efficacy of letters of credits. However, with respect to the issue before the court, this is mere hyperbole. The statutorily authorized "fraud exception" permits issuers to be enjoined from making payment (assuming the fraud claims have merit) regardless of whether the action proceeds in state court or federal court. *See W.O.A., Inc.*, 640 F.Supp. at 1158–59.

## III. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that plaintiffs' and defendant Dakota Bank's motions to remand (Doc. Nos 3, 6, and 11) be **GRANTED** because: (1) Dakota Bank is both a necessary and a real party in interest to one or more of the claims set forth in the amended complaint and not a nominal party whose presence may be ignored for purposes of determining jurisdiction; (2) complete diversity of jurisdiction is lacking and no other jurisdictional grounds for removal has been asserted; (3) defendant Dakota Bank is a citizen of the State of North Dakota, which prohibits removal under 28 U.S.C. § 1441(b); and (4) Dakota Bank's failure to join in Thyssen's removal as required by § 1441 also prohibits removal.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to Local Rule 72.1(E)(4), a party has ten days to file objections to this Report and Recommendation. Unless otherwise ordered by the District Judge, there is no right to file reply comments

and there will be not be a hearing. Further, the parties are urged to not repeat what has already been argued in the briefs since the briefs are part of the record for review the by the District Judge.

Nov. 7th, 2005.